WJC/TRP/maz                                                  381-2-1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LIMOLINER, INC., | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. 05-11888 |
| | ) | |
| SETRA OF NORTH AMERICA, INC., | ) | |
|     Defendant. | ) | |

### DEFENDANT SETRA OF NORTH AMERICA, INC.'S
### MOTION TO DISMISS

NOW COMES the defendant, SETRA OF NORTH AMERICA, INC. (hereinafter referred to as "SETRA"), a Maine corporation, by and through it attorneys, CAMPBELL, CAMPBELL, EDWARDS & CONROY, PC, and CREMER, KOPON, SHAUGHNESSY & SPINA, LLC (pending admission *pro hac vice*), and pursuant to Rules 12(b)(5) and 12(b)(6) of the Federal Rules of Civil Procedure, moves this court to dismiss Plaintiff, LIMOLINER, INC.'s (hereinafter referred to as "LIMOLINER") Complaint against SETRA. In support of its motion, SETRA states as follows:

### BACKGROUND

On or about August 17, 2005, LIMOLINER filed a complaint in the Norfolk County Superior Court, a true and correct copy of which is attached hereto as **Exhibit "A."** According to the return of service LIMOLINER filed with the Norfolk County Superior Court, a true and correct copy of which is attached hereto as **Exhibit "B,"** LIMOLINER attempted to serve SETRA by "corporate service," and placed the summons and complaint in the hands of Kenneth Nall, referenced as a "Team Coordinator," on Saturday, August 20, 2005. **Exhibit B.** On September 19, 2005, SETRA timely filed a notice of removal with this court, pursuant to 28 U.S.C. §1441(a), a true and correct copy of which is attached hereto as **Exhibit "C."**

1

In its complaint, LIMOLINER alleges that it purchased a motorcoach from SETRA on or about May 31, 2004, and, at that time, SETRA provided a written certification to LIMOLINER stating that the actual mileage of the motorcoach was 152,002 miles.  LIMOLINER attached a copy of the Odometer Disclosure Statement as Exhibit 2 to its Complaint.  However, in April of 2005, LIMOLINER learned that the actual mileage of he vehicle was approximately 409,000 miles, and not the 152,000 miles represented by SETRA.  LIMOLINER alleges that, in a letter addressed to SETRA dated June 4, 2005, it requested relief from SETRA but that SETRA failed and/or refused to make an appropriate response.  Accordingly, LIMOLINER filed its Complaint, which contains counts for breach of contract, breach of express and implied warranties, fraudulent inducement, misrepresentation, violation of the Massachusetts Consumer Protection Act (Chapter 93A, Section 11), violation of the Massachusetts Odometer Tampering Statute (Chapter 266, Section 141, *et seq.*), and violation of the federal Odometer Disclosure Act (49 U.S.C., § 32705).

SETRA purchased the motorcoach at issue in December of 2003, from a non-party, Upstate Transit, Inc., of Saratoga Springs, New York.  See **Exhibit "D,"** Affidavit of Patrick J. Scully, President and Chief Executive Officer of SETRA.  At the time of sale to SETRA, Upstate Transit provided SETRA with an Odometer Disclosure Statement indicating that the odometer on the motorcoach read 151,981 miles as of December 17, 2003.  **Exhibit D.**  A true and correct copy of this Odometer Disclosure Statement is attached hereto as **Exhibit "E."**  SETRA, in turn, relied upon Upstate Transit's Odometer Disclosure Statement in the subsequent sale of the vehicle at issue to LIMOLINER some six months later.  **Exhibit D.**

The Odometer Disclosure Statement issued by SETRA to LIMOLINER was based on the Disclosure Statement SETRA received from Upstate Transit, Inc.  **Exhibit D.**  No adjustment

was made to the odometer by SETRA at any time, and SETRA had no knowledge of any mileage discrepancy existing with the motorcoach at the time of its sale to LIMOLINER. **Exhibit D.** SETRA informed LIMOLINER that the Odometer Disclosure Statement issued by SETRA to LIMOLINER was based on the Disclosure Statement it received from Upstate Transit, and provided the Upstate Transit Disclosure Statement to LIMOLINER for their review. **Exhibit D;** also see **Exhibit "F,"** a true and correct copy of correspondence dated June 30, 2005, from Robert Jones, Vice President of SETRA, to Fergus McCann, the President of LIMOLINER.

## ARGUMENT

LIMOLINER's complaint against SETRA should be dismissed, first, because LIMOLINER failed to serve SETRA in accordance with the relevant federal and state rules. LIMOLINER attempted to serve SETRA by hand-delivering a copy of the summons and complaint to an officer of SETRA. However, LIMOLINER "served" a non-employee of SETRA. As will be explained more fully below, LIMOLINER's attempted service of process on a non-employee of SETRA is in clear in violation of the relevant rules and, accordingly, LIMOLINER's complaint must be dismissed pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure.

Second, LIMOLINER's complaint must be dismissed because LIMOLINER has failed to sufficiently state a cause of action against SETRA. Analyzing LIMOLINER's contractual causes of action under the laws of the State of Maine, as the Terms and Conditions to the Agreement to Purchase between LIMOLINER and SETRA require, LIMOLINER has failed to adequately allege that SETRA breached its contract with LIMOLINER, or that SETRA breached any express or implied warranties regarding the motorcoach. Moreover, because the core of

3

LIMOLINER's complaint sounds in contract, which is governed by Maine law, LIMOLINER's separate cause of action under the Massachusetts Consumer Protection Act cannot stand.

Analyzing LIMOLINER's tort causes of action against SETRA, LIMOLINER has also failed to adequately plead causes of action for misrepresentation and fraudulent inducement in that LIMOLINER has failed to establish that SETRA made a false representation of material fact with knowledge of its falsity. Also, LIMOLINER has failed to plead with particularity the circumstances constituting misrepresentation and fraudulent inducement, as is required under Mass.R.Civ.P. 9(b). Further, LIMOLINER has not alleged, and cannot allege, that SETRA actually altered the odometer at issue, or that SETRA acted with an intent to defraud. Accordingly, LIMOLINER's complaint should be dismissed pursuant to Mass.R.Civ.P.12(b)(6).

## I.  LIMOLINER'S COMPLAINT MUST BE DISMISSED FOR INSUFFICIENCY OF SERVICE OF PROCESS PURSUANT TO FED.R.CIV.P. 12(B)(5)

As mentioned above, Kenneth Nall is the individual who received the summons and complaint on August 20, 2005. Also See **Exhibit "G,"** Affidavit of Christopher L. Crassweller. However, Nall is not an employee of SETRA. **Exhibit G.** He is not an officer of SETRA. **Exhibit G.** He is not a director of SETRA. **Exhibit G.** He is not SETRA's president, treasurer, clerk, resident agent, cashier, secretary, or other officer in charge of the business at SETRA's principal place of business in North Carolina. **Exhibit G.** He is not a member of the SETRA corporation. **Exhibit G.** He is not a managing or general agent of SETRA. **Exhibit G.** He is not an agent authorized by appointment at SETRA or by law to receive service of process. **Exhibit G.** As will be explained more fully below, this attempted service is insufficient under the relevant federal and state rules pertaining to service of process and, therefore, LIMOLINER's complaint must be dismissed pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure.

4

1.    **Service of process was insufficient pursuant to the Federal Rules of Civil Procedure.**

Under Federal Rule of Civil Procedure 4(h), service upon a domestic corporation "shall be effected in a judicial district of the United States in the manner prescribed for individuals by subdivision (e)(1), or by delivering a copy of the summons and complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process." Fed.R.Civ.P. 4(h). Subdivision (e)(1) provides that "service upon an individual...may be effected...pursuant to the law of the state in which the district court is located, or in which service is effected." Fed.R.Civ.P. 4(e)(1).

As noted above, Kenneth Nall is the individual who received the summons and complaint on August 20, 2005. **Exhibit G.** However, Nall is not an officer, a managing agent, a general agent, or any other agent authorized by appoint or by law to receive service of process. **Exhibit G.** Nall is not even an employee of SETRA. **Exhibit G.** As such, the attempted service of SETRA was insufficient under federal law.

2.    **Service of process was insufficient under Massachusetts law.**

Under the laws of Massachusetts, where the district court is located, Mass.R.Civ.P. 4 provides that "service shall be made by delivering a copy of the summons and the complaint: (1) in any appropriate manner prescribed in subdivision (d) of this Rule; or (2) in the manner prescribed by the law of the place in which service is made...; or (3) by any form of mail addressed to the person to be served and requiring a signed receipt; or (4) as directed by the appropriate foreign authority in response to a letter rogatory; or (5) as directed by order of the court." Mass.R.Civ.P. 4(e). Mass.R.Civ.P. 4(d) provides that service upon a domestic corporation, or a foreign corporation subject to suit within the Commonwealth, shall be made by delivering a copy of the summons and complaint to an officer, to a managing or general agent, or

to the person in charge of the business at the principal place of business thereof within the Commonwealth, if any; or by delivering such copies to any other agent authorized by appointment or by law to receive service of process. Mass.R.Civ.P. 4(d)(2).

In addition, according to M.G.L.A. Chapter 223, Section 38, in an action against a foreign corporation which is engaged in business in the commonwealth of Massachusetts, service may be made in accordance with the section relative to service on domestic corporations in general. M.G.L.A. 223 §38. In an action against a domestic corporation, service shall be made upon the president, treasurer, clerk, resident agent, cashier, secretary, agent, or other officer in charge of the business or, if no such officer is found within the county, upon any member of the corporation. M.G.L.A. 223 §37.

In the instant matter, LIMOLINER did not attempt to serve SETRA by mail, there was no foreign authority directing service of SETRA, and no order of court regarding service of SETRA. Therefore, subdivisions (3), (4) and (5) of Mass.R.Civ.P. 4 are inapplicable. And, again, as noted above, Nall is not an employee of SETRA. **Exhibit G**. Nall is not an officer, a managing agent, or general agent of SETRA. **Exhibit G**. He is not a president, treasurer, clerk, resident agent, cashier, secretary, agent, or other person in charge of the business at SETRA's principal place of business in North Carolina. **Exhibit G**. Nall is not any other agent authorized by appointment at SETRA or by law to receive service of process. **Exhibit G**. Nall is not a member of the SETRA corporation. **Exhibit G**. As such, the attempted service of SETRA was insufficient under Massachusetts law.

### 3.    Service of process was insufficient under North Carolina law.

Under the laws of North Carolina, where service was attempted, service upon a domestic or foreign corporation must be made by: (a) delivering a copy of the summons and complaint to

an officer, director, or managing agent of the corporation or by leaving copies thereof in the office of such officer, director, or managing agent with the person who is apparently in charge of the office; (b) by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to be served or to accept service of process or by serving process upon such agent or the party in a manner specified by any statute; (c) by mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to the officer, director or agent to be served as specified in paragraphs (a) and (b); (d) by depositing with a designated delivery service authorized by law a copy of the summons and complaint, addressed to the officer, director, or agent to be served as specified in paragraphs (a) and (b), delivering to the addressee, and obtaining a delivery receipt. N.C.St.R.Civ.P. §1A-1, Rule 4.

In the instant matter, LIMOLINER did not attempt to serve SETRA by mail, or use a designated delivery service to deliver the summons and complaint and, therefore, subdivisions (c) and (d) of Rule 4 are inapplicable. And, again, as noted above, Nall is not an employee of SETRA. **Exhibit G.** Nall is not officer, director, or managing agent of the SETRA corporation. **Exhibit G.** Nall is not an agent authorized by appointment at SETRA or by law to be served or to accept service of process. **Exhibit G.** As such, the attempted service of SETRA was insufficient under North Carolina law.

## II.    LIMOLINER'S CAUSES OF ACTION SOUNDING IN CONTRACT MUST BE DISMISSED PURSUANT TO MAINE LAW.

### 1.    The laws of Maine apply to LIMOLINER's contractual causes of action.

According to the Terms and Conditions of the Agreement to Purchase between SETRA and LIMOLINER, a true and correct copy of which is attached hereto at **Exhibit "H,"** "[t]his Agreement shall be governed by and shall be construed in accordance with the laws of the State

7

of Maine." ¶13.  It is settled law that Massachusetts courts routinely enforce express choice of law provisions in a contract unless the law chosen by the parties violates established public policy or bears no reasonable relationship to the contractual transaction between the parties. *BNY Financial Corp. v. Fitwel Dress Co., Inc.,* 1997 WL42518 (Mass.Super.); see also, *M.I.L Electronics, Inc. v. Matsushita Electric Corp. of America, Inc.,* 1995 WL 809537 (Mass.Super.) (enforcing a New York express choice of law provision contained in an exclusive distributorship agreement).

In the instant matter, SETRA is incorporated under the laws of Maine.  See **Exhibit D.** SETRA services both United States and Canadian markets with used and new motorcoaches. **Exhibit D.**  It cannot reasonably be disputed that SETRA has a rational and legitimate interest in designating the law of a certain state, Maine, as controlling, considering the extent of SETRA's business in both the United States and Canada. See *BNY,* at *4 (where plaintiff is a New York based bank which entered into financial arrangements with clients throughout England and New York, it cannot reasonably be disputed that it had a rational and legitimate interest in designating the law of New York as controlling).  Accordingly, the choice of law provision in the Agreement should be given affect and, therefore, the laws of Maine govern the contractual causes of action contained in the complaint.

2.    **Under the laws of Maine, LIMOLINER has failed to adequately allege a cause of action for breach of contract and, as such, Count I must be dismissed.**

LIMOLINER seeks recovery for breach of contract in Count I.  Maine law requires that a party establish the following in order to prevail on a breach of contract claim: 1) the existence of a valid and binding contract between the parties; 2) that one party breached its duties with respect to the contract; and 3) that the other party suffered damages resulting

8

from the alleged breach. *Wheeler v. Hartford Insurance Co.*, 2003 WL 23112385 (Me. Super. 2003) (citing *Govan v. Trs. Of Boston Univ.*, 66 F. Supp. 2d 74, 82 (D. Mass. 1999), *cert. denied*, 533 U.S. 906 (2001). A material breach is defined as a "non-performance of a duty that is so material and important as to justify the injured party in regarding the whole transaction as at an end." *Jenkins, Inc. v. Walsh Bros., Inc.*, 776 A.2d 1229, 1234 (Me. 2001) (internal citations omitted).

LIMOLINER cannot establish that SETRA breached its duties with respect to the contract. The essence of the contract was the sale and purchase of a used vehicle without any accompanying warranties; in other words, the used vehicle was sold <u>as-is</u>. LIMOLINER is a sophisticated business entity that was fully aware at the time of sale that it was purchasing a used vehicle from SETRA, as-is. For instance, the Agreement to Purchase, which is attached hereto as **Exhibit H,** indicated in bold lettering that the motorcoach was sold **"No Warranty."** Similarly, a Vehicle/Equipment Delivery Report dated June 1, 2004, indicated, in bold type, in a section entitled **"Warranty Information,"** that the coach was a **"No Warranty Coach; As Is / Where Is."** A true and correct copy of this report is attached as **Exhibit "I."** Fergus McCann, the President of LIMOLINER, signed each of these documents, acknowledging that the terms of the sale included no warranties. LIMOLINER cannot complain to the Court that the vehicle did not meet its expectations, as LIMOLINER received what it bargained for, a used vehicle that it purchased as-is. Accordingly, LIMOLINER has not sufficiently pled that SETRA breached the contract for sale of the subject vehicle and, accordingly, Count I must be dismissed.

3.    **Under the laws of Maine, LIMOLINER has failed to adequately allege a cause of action for breach of express warranty and, as such, Count II must be dismissed.**

LIMOLINER seeks recovery for breach of express warranty in Count II, which is governed by the Maine Uniform Commercial Code, as the transaction at issue was one for the sale of goods. See 11 M.R.S.A. §§ 2-102, 2-105. Express warranties are discussed in Section 2313 of the Maine Uniform Commercial Code, which states: "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise" and "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." 11 M.R.S.A. § 2-313(1)(a)(b) (1995). Section 2-313 also makes clear that a warranty is not created by an affirmation "merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation." *Id.,* at § 2-313(2); *see also Miller v. Lentine,* 495 A.2d 1229, 1231 (Me. 1985) (noting that the term "puffing" is often used to denote "dealer's talk," "sales talk," and "praise of goods by the seller") (citations omitted).

Maine law requires a plaintiff demonstrate the following in order to prevail on a breach of express warranty claim: 1) the defendant made promises amounting to an express warranty; 2) breach of the warranty; 3) causation; and 4) damages. *See Maine Energy Recovery Co. v. United States,* 724 A.2d 1248, 1250 (Me. 1999). In addition, the Maine Supreme Court has stated that "[t]he circumstances surrounding the agreement, including the knowledge of both parties, should be considered in determining whether an express warranty was formed." *Miller v. Lentine, 495* A.2d at 1231.

The circumstances surrounding this agreement show that SETRA did not make an express warranty, nor did it make any promises, regarding the motorcoach or its mileage. A representative of SETRA completed the Odometer Disclosure statement, which stated: "[T]o the best of my knowledge, [the odometer] reflects the actual mileage of the vehicle..." (Exhibit 2 in the complaint) (emphasis added). As detailed above, the mileage discrepancy that resulted was caused through no fault of SETRA's. SETRA relied on the Odometer Disclosure Statement it had received from the previous owner of the motorcoach. It did not make any express warranties knowingly, intentionally, negligently, or with reckless disregard of the truth thereof. SETRA completed the Odometer Disclosure Statement to the best of its knowledge. The mileage discrepancy was not discovered until after the sale.

Furthermore, LIMOLINER is a sophisticated business entity that regularly deals in such transactions. LIMOLINER was fully aware that it was purchasing a used motorcoach and that SETRA disclaimed any and all warranties. The Agreement to Purchase, which is attached hereto as **Exhibit H,** indicated in bold lettering that the coach was sold **"No Warranty."** Similarly, the Vehicle/Equipment Delivery Report, which is attached hereto as **Exhibit I,** indicated, in bold type, in a section entitled **"Warranty Information,"** that the coach was a **"No Warranty Coach; As Is / Where Is."** Fergus McCann, the President of LIMOLINER, signed each of these documents. As such, this Court should dismiss Count II, as plaintiff has not sufficiently pled a cause of action under Maine law for breach of express warranty.

**4.    Under the laws of Maine, LIMOLINER has failed to adequately allege a cause of action for breach of implied warranties and, as such, Counts III and IV must be dismissed.**

The Maine Uniform Commercial Code also governs LIMOLINER's causes of action for breach of implied warranties, as the transaction at issue was one for the sale of goods. See 11 M.R.S.A. §§ 2-102, 2-105.  The implied warranty of merchantability, under which LIMOLINER seeks recovery for in Count III, is specifically discussed in 11 M.R.S.A. § 2-314 (1964), which states: "Unless excluded or modified by section 2-316, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."  Pursuant to the above section and 11 M.R.S.A. § 2-316(2) (1995), a warranty of merchantability is implied in a sale of goods if the seller is a merchant in the goods sold and the warranty of merchantability is not expressly excluded in the contract. *Jolovitz v. Alfa Romeo Distributors of North America,* 760 A.2d 625, 629 (Me. 2000).

Section 2-316(2) of the Maine Uniform Commercial Code recognizes that the implied warranty of merchantability (or any part of it) can be excluded or modified.  In order to do so, the language must mention "merchantability" and, in case of a writing, must be conspicuous.  *Id.*  The Maine Code defines "conspicuous" as "[A] term...so written that a reasonable person against whom it is to operate ought to have noticed it.  A printed heading in capitals ... is conspicuous.  Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color." 11 M.R.S.A. § 1-201(10) (1995).  Whether a term or clause is "conspicuous" or not is for decision by the court. *Id.*

The implied warranty of fitness for a particular purpose of the type which LIMOLINER seeks recovery for in Count IV is specifically discussed in 11 M.R.S.A. § 2-

315 (1995), which states: "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is, unless excluded or modified under section 2-316, an implied warranty that the goods shall be fit for such purpose." The implied warranty of fitness may also be excluded or modified.  11 M.R.S.A. § 2-316(2) (1995).  In order to be excluded, there must be a conspicuous writing.  *Id.* (see explanation of conspicuous *supra; see also* 11 M.R.S.A. § 1-201(10)).  An example of a sufficient exclusion of all implied warranties of fitness is "There are no warranties which extend beyond the description on the face hereof." *Id.*

More importantly for the instant matter, <u>any</u> implied warranties are excluded by expressions like "as is," "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty.  11 M.R.S.A. § 2-316(3)(a).  Comment 7 to this section states that such terms in ordinary commercial usage are understood to mean that the buyer takes the entire risk as to the quality of the goods involved.

In the instant matter, the Agreement to Purchase, which is attached hereto as **Exhibit H,** indicated in bold lettering that the bus was sold **"No Warranty."**  Fergus McCann, the President of LIMOLINER - the same individual who requested relief from SETRA pre-suit, signed the Agreement to Purchase on behalf of LIMOLINER.  The Vehicle/Equipment Delivery Report, attached hereto as **Exhibit I,** indicated, in bold, in a section entitled **"Warranty Information,"** that the motorcoach was a **"No Warranty Coach; As is / Where is."**  Fergus McCann also signed this Report on behalf of LIMOLINER.  These conspicuous disclaimers are sufficient under the Maine Uniform Commercial Code to disclaim both the

implied warranty of merchantability and the implied warranty of fitness for a particular purpose. As such, this Court should dismiss Counts III and IV, in their entirety, as they do not sufficiently plead a cause of action under Maine law.

**5.    Under the laws of Maine, LIMOLINER has failed to adequately allege a cause of action for breach of good faith and fair dealing and Count VII must be dismissed.**

LIMOLINER seeks recovery for breach of good faith and fair dealing in Count VII. The Maine Uniform Commercial Code states that "(e)very contract or duty within this Title imposes an obligation of good faith in its performance or enforcement." 11 M.R.S.A. § 1-201(3) (1995). The Comments further explain that in commercial transactions, good faith is required in the performance and enforcement of all agreements or duties. Failure to perform or enforce in good faith can constitute a breach of contract. The doctrine of good faith, however, does not create a separate duty of fairness or reasonableness which can be independently breached. The Comments also note that under the definition of good faith in § 2-103, contracts made by a merchant have incorporated in them the explicit standard of honesty in fact (§ 1-201) and observance by the merchant of reasonable commercial standards in fair dealing in the trade.

There is absolutely nothing in the record that establishes that SETRA has failed to act in good faith. As noted above, the essence of the contract was the sale of a vehicle in as-is condition. A breach of good faith and fair dealing cannot lie for defects in a vehicle, latent or patent, when sold in an as-is transaction. LIMOLINER, as a sophisticated business entity, was fully aware of the exclusion of any warranties of the vehicle, and cannot now complain that SETRA did not act in good faith when it sold the subject motorcoach in as-is condition, especially considering that, at the time of sale, SETRA had no knowledge of the mileage

14

discrepancy that LIMOLINER also complains of.  Because LIMOLINER has not sufficiently pled a cause of action for breach of the good faith and fair dealing under Maine law, Count VII must also be dismissed.

**III.    LIMOLINER HAS FAILED TO ADEQUATELY PLEAD A CAUSE OF ACTION UNDER THE MASSACHUSETTS CONSUMER PROTECTION ACT, M.G.L. C. 93A.**

    **1.    LIMOLINER'S M.G.L. c. 93A claims are nothing but embroidered "breach of contract" claims and, as such, cannot stand together with the Maine choice of law provision contained in the Agreement to Purchase.**

An action pursuant to General Law c. 93A, under which LIMOLINER seeks recover in Count VIII, is "neither wholly tortious nor wholly contractual in nature." *Kitner v. CTW Transport, Inc.,* 53 Mass.App.Ct. 741, 746 (2002) (internal citations omitted).  "[C]laims of unfair or deceptive acts or practices may be founded on activities that more closely resemble either a traditional breach of contract action, or an action in tort. *Id.* (internal citations omitted). Therefore, the classification of a M.G.L. c. 93A claim as either a contract or tort action may be dispositive in determining the scope and effect of a choice of law provision in a contract. *Id.* (internal citations omitted).  Thus, if a particular defendant's unfair conduct with respect to a contract sounds in tort, M.G.L. c. 93A will apply to that contract notwithstanding a contract provision that states that contractual claims will be interpreted under another State's law. *Id.* (internal citations omitted).

Further, it is well settled that a contractual provision making the law of another jurisdiction applicable to the agreement between the parties bars assertion of unfair trade practices claims under M.G.L. c. 93A if they amount, in substance, to "embroidered 'breach of contract' claims." *BNY Financial Corp.,* at *4 (internal citations omitted).  In *BNY Financial,* the court held that the defendants' M.G.L. c. 93A claims went to the core of the contract dispute

and, therefore, the choice of law provision in the contract barred application of the Massachusetts statute. Similarly, in *Worldwide Commodities, Inc. v. J Amicone Co.,* 36 Mass.App.Ct. 304 (1994), the Appeals Court held that a choice of foreign law provision in a contract barred the application of Massachusetts' G.L.c. 93A to matters addressed by the contract. *Id.,* at 308. In *Computer Systems Engineering, Inc. v. Quantal Corp.,* 571 F.Supp. 1365 (D.Mass.1983), aff'd. 740 F.2d 59 (1984), Judge Keeton opined that the decision of whether to apply M.G.L. c. 93A or the law of the foreign state governing the parties' agreement "should depend on whether contract-like or instead tort-like elements of the section 93A claim predominate on the facts of the particular case." *Id.,* at 1370-71. *See, also, Worldwide Commodities,* at 307.

In the instant matter, LIMOLINER has failed to adequately plead in Count VIII tortious acts or omissions on the part of SETRA that would enable this court to sufficiently evaluate whether the core of the dispute is contractual or tortious in nature. Nevertheless, it is clear from the complaint that LIMOLINER's M.G.L. c. 93A claims amount to embroidered "breach of contract" claims. LIMOLINER simply says that SETRA "knowingly" or "willfully" violated M.G.L. c. 93A., without providing any support for their bald assertion. The allegations of fraudulent misrepresentation and inducement center around warranties that were allegedly breached by SETRA and, accordingly, are contractual claims at the core. Overall, the contract violations are essential elements of the of the M.G.L. c. 93A claims and, therefore, the M.G.L. c. 93A claims cannot stand because it conflicts with the Maine choice of law provision. As such, Count VIII should be dismissed.

**2.    Even assuming arguendo that the M.G.L. c. 93A claims are tortious in nature, LIMOLINER has failed to adequately plead the level of "rascality" required to hold SETRA liable under M.G.L. c. 93A.**

As the First Circuit explained, Section Two of Chapter 93A makes it unlawful to engage in "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Saint-Gobain Industrial Ceramics, Inc. v. Wellsons*, 246 F.3d 64, 73 (1st Cir. 2001); citing Mass. Gen. Laws ch. 93A, § 2. Section 11 extends Section Two's general protection to commercial parties. *Id.*; ch. 93A, § 11. The objectionable conduct "must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble world of commerce." *Id.* While Chapter 93A "was designed to encourage more equitable behavior in the marketplace and impose liability on persons seeking to profit from unfair practices, it does not contemplate an overly precise standard of ethical or moral behavior." *Id.* Nevertheless, it is clear that "Chapter 93A liability may exist if the defendant's conduct falls "within at least the penumbra of some common-law, statutory, or other established concept of unfairness" or is "immoral, oppressive or unscrupulous." *Id.*

The requirement of the "rascality" mentioned above prevents simple breach of contract or breach of warranty claims from being actionable pursuant to Chapter 93A. See *Saint-Gobain*, at 73 (a breach of warranty alone does not necessarily give rise to a Chapter 93A violation); *Interstate Brands Corp.*, at 61 (violations of Chapter 93A must meet a higher standard of liability than do breaches of an implied covenant of good faith and fair dealing); *Madan v. Royal Indemnity Co.*, 26 Mass.App.Ct. 756, 762 (1989) (the mere breach of contract, without more, does not amount to a violation of Chapter 93A); *Interstate Brands Corp. v. Lily Transportation Corp.*, 256 F.Supp.2d 58, 61 (D.C. Mass. 2003) (even if a party knowingly breached a contract,

17

it does not raise the breach to the level of a Chapter 93A violation); *Underwood v. Risman*, 414 Mass. 96, 99-100 (1993) (a duty exists under Chapter 93A to disclose material facts known to a party at the time of a transaction - there is no liability for failing to disclose what a person does not know, and liability has never been imposed for nondisclosure of a fact not known by the person against whom liability is sought).

On the other hand, facts supporting a claim of fraud or deceit generally will be enough to maintain an action under Chapter 93A, even though it is not necessary to state a common-law claim in order to maintain a cause of action under Chapter 93A based on conduct sounding in fraud, deceit, or misrepresentation. *See, Winter Panel Corp. v. Reichhold Chemicals, Inc.*, 823 F.Supp. 693, 975 (D.C. Mass. 1993); *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 703-704, 322 N.E.2d 768 (1975). However, again, a plaintiff's allegations must demonstrate that a defendant engaged in "a level of rascality that would raise an eyebrow of someone injured in the rough and tumble of the world of commerce." *Winter Panel Corp.*, at 974-975 (even though court recognized that facts supporting a claim of fraud or deceit generally would be enough to maintain an action under Chapter 93A, it doubted whether any of plaintiff's allegations could support an action under Chapter 93A because plaintiff did not demonstrate the "rascality" required by the rule).

In the instant matter, LIMOLINER has failed to allege that SETRA engaged in any type of act that was of the type of "rascality that would raise an eyebrow of someone injured in the rough and tumble of the world of commerce," as is required to allege a Chapter 93A violation. The core of LIMOLINER's allegations concern the discrepancy in the mileage that was disclosed by SETRA at the time of sale to LIMOLINER and the mileage as discovered by LIMOLINER subsequent to its purchase of the motorcoach. However, when SETRA sold the

motorcoach to LIMOLINER, it did so in good faith reliance on the Odometer Disclosure Statement that it was provided by Upstate Transit. SETRA was unaware of the mileage discrepancy at the time of the motorcoach's sale to LIMOLINER and, as the *Underwood* court acknowledged, there is no liability under Chapter 93A for failing to disclose what a person does not know. When considered in light of LIMOLINER's own admissions that it is in the business of providing luxury transportation bus service and has established a "nitch" market for sophisticated travelers (See Complaint, ¶¶ 10-12), SETRA has engaged in no unfair practices in the instant matter. *See, Madan v. Royal Indemnity Co.,* 26 Mass.App.Ct. 756, 763 (1989) (a plaintiff's conduct, his knowledge, and what he reasonably should have known may be factors in determining whether a practice is unfair). Accordingly, Count VII should be dismissed.

## IV.  LIMOLINER HAS FAILED TO ADEQUATELY PLEAD COUNTS ALLEGING FRAUD.

**1.    LIMOLINER's fraudulent inducement and fraudulent misrepresentation claims must be dismissed because it has not adequately alleged that SETRA made a false representation <u>with knowledge of its falsity.</u>**

Under Massachusetts law, in order to establish a cause of action for fraudulent inducement, a plaintiff must show that "the defendant made a false representation of material fact with knowledge of its falsity, that the defendant made the statement for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon that statement to his detriment." *Britton v. Thompson,* 2001 WL 170656 (2001); *Town and Country Fine Jewelry Group, Inc. v. Hirsch,* 875 F.Sup. 872, 876 (D. Mass. 1994); *see, also Commerce Bank & Trust Co. v. Hayeck,* 46 Mass.App.Ct. 687, 692 (1999). Similarly, in order to succeed on a claim for fraudulent misrepresentation, the plaintiff must establish that the defendant made a false representation of a material fact, with knowledge of its falsity, for the purpose of

inducing the plaintiff to act thereon, and that the plaintiff relied upon that representation as true and acted upon it to his or her detriment. *Falby v. New England Forestry Foundation, Inc.*, 2003 WL 734453 (Mass.Super. 2003); *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 703 (1975).

In the instant matter, LIMOLINER has failed to adequately allege a cause of action for fraudulent inducement or fraudulent misrepresentation in that it has not alleged, nor could it allege, that SETRA made a false representation <u>with knowledge of its falsity</u>. As mentioned above, SETRA relied on Upstate Transit's Mileage Disclosure Statement when it sold the vehicle to LIMOLINER. SETRA had no knowledge of any mileage discrepancy at the time of the sale of the motorcoach to LIMOLINER. As such, Counts V and VI must be dismissed.

**2. LIMOLINER has failed to plead with particularity the circumstances constituting misrepresentation and fraudulent inducement, as is required under Mass.R. Civ.P. 9(b).**

Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). This pleading requirement also applies to claims of misrepresentation. *Blacksmith Investments, LLC v. Cives Steel Co., Inc.*, 228 F.R.D. 66, 73 (D. Mass. 2005) (dismissing the complaint because it did not allege who made the allegedly misleading statements, who relied on them, where or when they were made, and the contents of the allegedly misleading statements). Massachusetts courts and the First Circuit have stated that "[t]he clear weight of the authority is that Rule 9 requires specification of time, place and content of an alleged false representation, but not the circumstances or evidence from which fraudulent intent could be inferred." *Id.* (quoting *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228 (1st Cir. 1980)); *see also In re the Receivership Estate of Indian Motorcycle Manufacturing, Inc.*, 299 B.R. 36, 44 (D. Mass.

2003) (noting that the party alleging fraud must specify the allegedly fraudulent statements, the identity of the speaker, when and where the statements were made, and why the statements were fraudulent); *see also Equipment & Systems For Industry, Inc. v. Northmeadows Const. Co.*, 59 Mass.App.Ct. 931, 931-932 (2003) (at a minimum, a plaintiff alleging fraud must particularize the identity of the person(s) making the representation, the contents of the misrepresentation, and where and when it took place ... in addition, the plaintiff should specify the materiality of the misrepresentation, its reliance thereon, and resulting harm). In the *Equipment* matter, the complaint simply contained conclusory assertions that the defendant's actions constituted intentional, deceitful, and fraudulent conduct; that it acted under false pretenses; and that its actions constituted a breach of its implied covenant of good faith and fair dealing. *Id.* However, the court held that those allegations did not "remotely comply" with the requirements of Rule 9(b). *Id.*

The instant matter is analogous to the *Equipment* matter. Counts V and VI of LIMOLINER's complaint contain nothing more than self-serving, conclusory allegations that SETRA's conduct constituted intentional, deceitful or fraudulent conduct. However, as the *Equipment* court stated, these types of self-serving, conclusory allegations are insufficient to satisfy the requirements of Rule 9(b). Therefore, Counts V and VI must be dismissed.

## V.    LIMOLINER HAS FAILED TO ADEQUATELY PLEAD CAUSES OF ACTION UNDER THE STATE AND FEDERAL ODOMETER TAMPERING STATUTES.

### 1.    LIMOLINER has failed to adequately plead a cause of action under the Massachusetts Odometer Tampering statute, Chapter 266, Section 141.

Under M.G.L.A. 266 §141, "whoever ... resets or alters the odometer of any motor vehicle with the intent to change the number of miles indicated thereon" is liable in a civil action of tort or contract. The Massachusetts statute roughly parallels the federal statute,

21

discussed below, in that civil liability attaches to what the used car trade calls "odometer spinback." But differences exist between the two statutes. *Commonwealth v. Colonial Motor Sales*, 420 N.E.2d 20 (1981). The Massachusetts statute imposes liability upon whoever "<u>alters</u> the odometer of any motor vehicle with the intent to change the number of miles indicated thereon." *Id.* (emphasis added). The *Commonwealth* case acknowledges the difference of the federal statute, in that the federal statute requires an "intent to defraud." *Id.* Fraud is implied in the Massachusetts statute - the fact of odometer tampering itself makes out a case, unless the defendant establishes that it was none of his doing or that there was some explanation. *Id.*

In the instant matter, LIMOLINER has failed to adequately allege that SETRA actually reset or altered the odometer, as is required to establish liability under the Massachusetts statute. LIMOLINER's allegations concerning the alleged violation of the Massachusetts statute do not even properly state the requirements of the Massachusetts statute. For instance, M.G.L.A. Chapter 266, Section 141 does not prohibit the sale of any vehicle other than one with the true mileage driven (See Complaint, ¶81); rather, M.G.L.A. prohibits the sale of any <u>device</u> which causes the odometer to register an inaccurate mileage. In addition, a defendant's advertisement for the sale of a vehicle with an improperly stated mileage is irrelevant (See Complaint, ¶82); what is relevant is whether the defendant <u>sold a device</u> which causes an odometer to register an inaccurate mileage, or whether the defendant actually <u>reset</u> the odometer, or whether a defendant <u>operated a vehicle</u> knowing that the odometer was inaccurate.

LIMOLINER will be unable to allege, in good faith, that SETRA altered or reset the odometer. The Odometer Disclosure Statement that SETRA provided LIMOLINER showed that

the odometer reading at the time of SETRA's purchase of the motorcoach was approximately 20 miles less than the odometer reading at the time of LIMOLINER's purchase of the motorcoach. SETRA relied on the Odometer Disclosure Statement provided by Upstate Transit when it subsequently sold the motorcoach to LIMOLINER.

The fact that SETRA did not alter or reset the odometer clearly establishes that LIMOLINER has not, and cannot in good faith in the future, adequately allege that SETRA is liable for odometer rollback under the Massachusetts statute. For those reasons, Count IX must be dismissed.

### 2. LIMOLINER has failed to adequately plead a cause of action under the Federal Odometer statute, 49 U.S.C. §32701, et seq.

The Federal Odometer Act requires all persons transferring a motor vehicle to give an accurate, written odometer reading to the purchaser or recipient of the transferred vehicle. 49 U.S.C. §32705. A person may not alter an odometer of a motor vehicle intending to change the mileage registered by the odometer. 49 U.S.C. §32703. In order to succeed on a private cause of action claim of odometer fraud, a transferee must demonstrate two essential elements: (1) violation of the Act's odometer disclosure requirements (i.e. the providing of an inaccurate odometer reading), and (2) an intent to defraud. *Diersen v. Chicago Car Exchange,* 110 F.3d 481, 487 (7th Cir. 1997); also see *Ryan v. Edwards,* 592 F.2d 756 (4th Cir. 1979) (proof of intent to defraud was required before liability could be imposed under provisions which govern mileage disclosure when ownership of a motor vehicle is transferred). Mere negligence cannot be the basis of civil liability under the Odometer Act. *Diersen,* at 488.

In *Diersen,* the Seventh Circuit held that a purchaser of a used automobile who alleged that the seller made a false odometer disclosure failed to establish intent to defraud on the seller and, thus, could not recover in an action brought under the Act. *Id.,* at 488. The court went on to

state that even if the odometer statement given by the seller was inaccurate, the seller had relied upon the statement given by the former owner from whom it had purchased the vehicle, and nothing indicated that the seller had reason to believe the statement was false. *Id.*, at 488. The court acknowledged that one could argue that the defendant ought to have conducted further inquiry into the car's mileage instead of relying upon the figure given by the prior owner. *Id.* However, "mere negligence" is by no means the same as "intent to defraud," and without any evidence of fraudulent intent, the plaintiff cannot prevail on his claim of odometer fraud. *Id.*

The instant matter is strikingly similar to *Diersen*. SETRA purchased the motorcoach from Upstate Transit, who provided SETRA with an Odometer Disclosure Statement. SETRA relied on the Statement provided by Upstate Transit when it subsequently sold the motorcoach to LIMOLINER. Although LIMOLINER may argue that SETRA should have conducted a more detailed inquiry into the motorcoach's mileage, mere negligence in not doing so is insufficient to establish liability under the federal statute, as there must be an intent to defraud. Just as in *Diersen*, there is no intent to defraud in the instant matter. Accordingly, Count X must be dismissed.

## CONCLUSION

For the reasons set forth above, SETRA respectfully requests that this court dismiss this case pursuant to Rules 12(b)(5) and 12(b)(6) of the Federal Rules of Civil Procedure, plus such other and further relief as this court deems just.

SETRA OF NORTH AMERICA, INC., Defendant,

By its Attorneys,

William J. Cremer (pending admission *pro hac vice*)
Thomas R. Pender (pending admission *pro hac vice*)

Cremer, Kopon, Shaughnessy & Spina, LLC
180 North LaSalle Street, Suite 3300
Chicago, IL   60601
Tel:  (312) 726-3800

James M. Campbell BBO # 541882
Campbell, Campbell, Edwards & Conroy, PC
One Constitution Center, 3rd Floor
Boston, MA   02129
Tel:  (617) 241-3000

Doc. #104871

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the following counsel of record for Limoliner, Inc., via *First Class Mail* on September 26 , 2005.

> Jonathan D. Friedman, Esq.
> Rudolph Friedman LLP
> 92 State Street
> Boston, MA 02109

_Kiley Belliveau_
Kiley Belliveau

# EXHIBIT A

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS:                    SUPERIOR COURT DEPARTMENT
                               CIVIL ACTION NO.:

                                      05   01421

|  |  |
|---|---|
| LIMOLINER, INC., | ) |
| PLAINTIFF, | ) |
|  | ) |
| v. | ) |
|  | ) |
| SETRA OF NORTH AMERICA, INC., | ) |
| DEFENDANT. | ) |

## COMPLAINT

1. The plaintiff LimoLiner, Inc. ("LimoLiner") is a corporation duly organized pursuant to law having a usual place of business at Stoughton, County of Norfolk, Commonwealth of Massachusetts.

2. Setra of North America, Inc. ("Setra") is a corporation duly organized pursuant to law having a usual place of business at 6012-B High Point Road, Greensboro, North Carolina, 27407.

3. Setra does business throughout the Unites States and Canada and holds it self out as, "one of the world's leading producers of luxury motorcoaches".

4. Setra manufactures motorcoaches and is a reseller of pre-owned motorcoaches.

5. Setra regularly and usually does business in Massachusetts, advertises in Massachusetts. delivers product into Massachusetts, sends mail to Massachusetts, transacts business in Massachusetts and communicates electronically within Massachusetts.

6. This Court has jurisdiction over the defendant due to the Long Arm Jurisdiction and due to defendant's numerous and substantial business contacts within Massachusetts.

7. As part of Setra's business practices, it sells pre-owned busses (coaches) throughout the United States which includes purchases made by entities in Massachusetts.

8. Setra in its advertising materials, relative to pre-owned coaches, states that the vehicles undergo, "a thorough inspection at Setra to ensure that the customer gets the best product available at a reasonable investment" and that, "all components of the vehicle requiring replacement are refurbished with genuine Setra parts ensuring that the customer will get all the quality and long life that they expect".

9. Setra in its advertisement claims that it operates, "a state of the art service facilities" that "incorporates sufficient diagnostic equipment"... so you can be confident that your Setra Coach will be running smoothly and profitably whenever you need it".

10. The plaintiff, LimoLiner, is in the business of providing luxury transportation bus service between Boston and New York City.

11. LimoLiner for its bus service utilizes specially equipped coaches that provide internet movies, hostess service and luxury accommodations together with television and DVD entertainment en route.

12. LimoLiner has established a nitch market for sophisticated travelers, business travelers and luxury bus travels between New York and Boston.

13. On or about May 31, 2004, LimoLiner purchased a Prevost H3-45 motorcoach from Setra of North America, Inc. for a purchase price of $205,000.00 all as appears in the Bill of Sale attached hereto as Exhibit 1.

14. At the time the plaintiff purchased the motorcoach from the defendant, a written certification was given by Setra to the plaintiff stating that the actual mileage of the vehicle was 152,002 miles. A copy of the Odometer Disclosure Statement required by both federal and state law signed by the defendant is attached hereto as Exhibit 2.

15. Prior to the purchase of this vehicle, LimoLiner made the defendant aware that the plaintiff intended, after the purchase of the vehicle, to convert the vehicle into a luxury coach for use in the business of deluxe passenger transportation between Boston and New York.

16. The plaintiff dealt with representatives of the defendant relative to the purchase in question, told representatives of the defendant the anticipated use of the vehicle, explained to the defendant the intended use of the vehicle and obtained from the defendant their advice regarding the appropriateness of the purchase of the vehicle for the anticipated and proposed use.

17. Prior to the purchase of the vehicle the plaintiff informed the defendant and its representatives that upon purchase of the vehicle the plaintiff intended to refit the interior of the coach and that plaintiff intended to install onboard entertainment, power, plumbing, communications equipment, kitchen equipment, washroom and luxury seating.

18. The plaintiff was assured by the defendant and its representatives that the coach in question would be appropriate for this retro fitting and that the vehicle of its age and mileage would serve the plaintiff's needs for its intended use and service.

19. The plaintiff, prior to purchasing the vehicle in question, relied upon: (a) the expertise of the defendant and its representatives; (b) the reputation of the defendant and its representatives; (c) the written representations made by the defendant and its representatives regarding the actual mileage of the vehicle; and (d) the representations of defendant and its representative in the defendant's written materials regarding the defendant's expertise and knowledge and in particular the fact that the defendant would have inspected the vehicle thoroughly to ensure to the plaintiff the "best product available at a reasonable investment".

3

20. Upon purchase of the vehicle a complete refit of the interior was undertaken at Amadas Coach in Moneta, Virginia.

21. The refitting of the interior cost approximately $155,000.00 and included the installation of onboard entertainment, power, plumbing, communications equipment, kitchen, washroom and luxury seating.

22. After the refitting of the motorcoach purchased from the defendant, the motorcoach was placed into service on or about September 1, 2004.

23. Since being placed in service the vehicle had repeated mechanical failures.

24. The repeated mechanical failures have occurred from the time of delivery of the coach to the plaintiff to the present. These failures included, but was not limited to, a complete irrepairable failure of the engine transmission system which required the plaintiff to have the engine transmission system replaced by Power Products, a division of Detroit Diesel.

25. In April of 2005, when the vehicle was being repaired at Detroit Diesel for the engine transmission system failure, Detroit Diesel reviewed the onboard ECM monitor and determined that the actual mileage of the motorcoach was 507,471 miles.

26. Prior to receiving the actual ECM monitor mileage from Detroit Diesel, the plaintiff had utilized the vehicle for only 98,000 as shown on the odometer.

27. As a result of the information obtained from Detroit Diesel, it was learned that at the time the vehicle was purchased by the plaintiff from the defendant that the actual mileage was approximately 409,000 not the 152,000 miles as represented in writing by the defendant to the plaintiff.

4

28. The difference of approximately 260,000 miles of use on the motorcoach in excess of the
    certified figure was a material misrepresentation of fact made by the defendant to the
    plaintiff.

29. A vehicle of the type in question with over 400,000 miles is a significantly different vehicle
    than a vehicle of this description with only 150,000 miles.

30. Had the plaintiff been informed by the defendant of the true mileage, the plaintiff would not
    have purchased the vehicle nor would it have spent $155,000.00 refitting the vehicle for its
    intended use.

31. The vehicle is unfit for its intended use and continues to have mechanical problems
    consistent with a vehicle with actual use in excess of 400,000 miles which such mechanical
    problems are not consistent with a vehicle with mileage of 150,000 miles.

32. On or about June 4, 2005, the plaintiff sent a demand to defendant outlining the facts set forth
    above and requesting relief from the defendant. A copy of plaintiff's letter of June 4, 2005 is
    attached hereto as Exhibit 3.

33. The defendant has failed and/or refused to make an appropriate response.

34. On July 22, 2005, the defendant, in writing, acknowledged that the mileage on the vehicle
    had been understated by at least 100,000 miles. See Exhibit 4 attached hereto.

35. The vehicle in question has had significant and repeated mechanical repairs which have cost
    the plaintiff significant sums of money to remedy. In addition, the plaintiff has lost revenue
    due to the vehicle not being able to be utilized for its services.

## COUNT I
### (Breach of Contract)

36. The plaintiff reaffirms and realleges the allegations contained in paragraphs 1 through 35 and incorporates them by reference.

37. The plaintiff and defendant entered into a contract for the sale of the vehicle in question.

38. The defendant breached the contract by not selling to the plaintiff the vehicle in question in accordance with the terms and conditions of the contract.

39. As a result of the defendant's breach of the contract with the plaintiff, the plaintiff has been caused to suffer damages and injury.

## COUNT II
### (Breach of Express Warranty)

40. The plaintiff reaffirms and realleges the allegations contained in paragraphs 1 through 39 and incorporates them by reference.

41. The seller/defendant expressed the warranty and represented the condition of the vehicle including the mileage on the vehicle.

42. The seller breached the expressed warranty regarding the mileage of the vehicle.

43. The mileage stated by the defendant to the plaintiff became an affirmation, fact or promise which was part of the basis of the bargain between the plaintiff and the defendant.

44. The defendant made these expressed warranties knowingly, intentionally or negligently or with reckless disregard of the truth thereof.

45. The plaintiff relied upon the representations of the defendant.

6

46. As a result of the defendant's breach of the expressed warranty, the plaintiff has been caused to suffer damages and injury.

## COUNT III
### (Breach of Contract - Implied Warranty of Merchantability)

47. The plaintiff reaffirms and realleges the allegations contained in paragraphs 1 through 46 and incorporates them by reference.

48. The defendant represented criteria as to the merchantability of the vehicle in question.

49. The defendant warranted that the vehicle would pass without objection in the trade under the contract description which such description included the mileage stated on the Bill of Sale.

50. The vehicle did not conform to the contract description and would not pass without objection in the trade.

51. The actions of the defendant were in violation of the implied warranty of merchantability.

52. The defendant's breach of the implied warranty of merchantability has caused the plaintiff to suffer damages and injury.

## COUNT IV
### (Breach of Contract - Implied Warranty of Fitness for a Particular Purpose)

53. The plaintiff reaffirms and realleges the allegations contained in paragraphs 1 through 52 and incorporates them by reference.

54. The plaintiff made known to the defendant prior to its purchase that the buyer was purchasing the vehicle in question for a particular purpose.

55. The defendant seller had reason to know the particular purpose for which the plaintiff intended to use the vehicle in question.

56. The plaintiff relied upon the seller's skill or judgment to select or furnish an appropriate vehicle for the intended use.

7

57. The vehicle purchased by the plaintiff from the defendant was not fit for the particular use in question.

58. As a result of the vehicle not being fit for the particular use in question, the plaintiff suffered damages and injury.

## COUNT V
### (Fraudulent Inducement)

59. The plaintiff reaffirms and realleges the allegations contained in paragraphs 1 through 58 and incorporates them by reference.

60. As set forth above, the defendant made material factual representations to the plaintiff prior to the purchase of the vehicle in order to induce the plaintiff to purchase the vehicle.

61. The material statements of fact made by the defendant to the plaintiff to induce the plaintiff to purchase the vehicle in question were knowingly false or were made with reckless disregard of the truthfulness thereof.

62. The plaintiff reasonable relied on the material factual representations made by the defendant to the plaintiff.

63. But for the material factual representations made by the defendant to the plaintiff, the vehicle in question would not have been purchased by the plaintiff.

64. As a result of the plaintiff's reasonable reliance on the material misrepresentations of fact made by the defendant, the plaintiff was caused to change its position and was injured thereby.

## COUNT VI
### (Misrepresentation)

65. The plaintiff reaffirms and realleges the allegations contained in paragraphs 1 through 64 and incorporates them by reference.

66. As set forth above, the defendant made material factual representations to the plaintiff.

67. The material factual representations made to the plaintiff by the defendant were made with an intent to induce the plaintiff to rely thereupon.

68. The representations regarding the vehicle in question were material and were made with the intent of seeking to induce the plaintiff to reasonably rely thereupon.

69. The plaintiff did reasonably rely upon the representations of fact made by the defendant.

70. At the time the defendant made the representations of fact regarding the vehicle to the plaintiff, the defendant knew that the representations were true or otherwise failed to reasonably investigate the truthfulness thereof.

71. As a result of the defendant's misrepresentations of the material facts to the plaintiff which the plaintiff reasonably relied upon the plaintiff was caused to suffer damages and injury.

## COUNT VII
### (Breach of Good Faith and Fair Dealing)

72. The plaintiff reaffirms and realleges the allegations contained in paragraphs 1 through 71 and incorporates them by reference.

73. Every contract has reputed thereupon an obligation of good faith and fair dealing.

74. The defendant violated and/or breached the obligation of good faith and fair dealing by misrepresenting to the plaintiff the vehicle in question, the mileage of the vehicle in question and the suitability of the vehicle in question for the plaintiff's intended purposes.

75. As a result of the defendant's breach of its obligation of good faith and fair dealing to the plaintiff related to the vehicle in question, the plaintiff has been caused to suffer damages and injury.

## COUNT VIII
### (Violation of Chapter 93A, Section 11)

76. The plaintiff reaffirms and realleges the allegations contained in paragraphs 1 through 75 and incorporates them by reference.

77. The plaintiff and defendant are persons engaged in commerce or trade as defined by Chapter 93A of the Massachusetts General Laws and the Regulations of the Attorney General enacted pursuant thereto.

78. The actions of the defendant as set forth above constitute a knowing, willful, intentional or negligent violation of Chapter 93A, Sections 2 and 11 and also constitute a knowing violation of the Regulations of the Attorney General pursuant to the Commonwealth of Massachusetts enacted pursuant to Chapter 93A of the Massachusetts General Laws.

79. As a result of the defendant's breach of Chapter 93A and the Regulations of the Attorney General enacted pursuant thereto, the plaintiff has been caused to suffer damages and injury.

## COUNT IX
### (Violation of Massachusetts General Laws Chapter 266, Section 141, et sec.)

80. The plaintiff reaffirms and realleges the allegations contained in paragraphs 1 through 79 and incorporates them by reference.

10

81. Pursuant to Massachusetts General Laws Chapter 266, Section 141, prohibits the sale of any vehicle other than with the true mileage driven.

82. The defendant did sell a motor vehicle with improperly stated mileage and did advertise the sale of said vehicle.

83. In violation of Massachusetts General Laws Chapter 266, Section 141 is a per se violation of Chapter 93A of the Massachusetts General Laws and constitutes an unfair or deceptive method of competition.

84. The actions of the defendant constitute a knowing, intentional or negligent violation of Massachusetts General Laws Chapter 266, Section 141 and a violation therefore of Chapter 93A of the Massachusetts General Laws.

85. The sale of the vehicle in question was violative of the Truth and Mileage Act as set forth in Title 49 United States Code, Section 32705.

86. The action of the defendant in transferring title to the vehicle without properly disclosing the true mileage of the vehicle constitutes a violation of 49 USC, Section 32705 and constitutes a per se violation of Chapter 93A of the Massachusetts General Laws.

## COUNT X
**(Violation of Chapter 266, Section 141 of the Massachusetts General Laws and Title 49 of the United States Code, Section 32705)**

87. The plaintiff reaffirms and realleges the allegations contained in paragraphs 1 through 86 and incorporates them by reference.

88. The actions of the defendant in violation of Massachusetts General Laws Chapter 266, Section 141 and Title 49 of the US Code, Section 32705 have caused the plaintiff to suffer damages and injury.

11

WHEREFORE, the plaintiff demands as follows:

1. That this Honorable Court rescind the sale in question and order the defendant to repay to the plaintiff the purchase price of the vehicle, the cost of retrofitting of the vehicle and all other monetary damages sustained by the plaintiff;

2. That the Court award judgment in favor of the plaintiff against the defendant in such amount as the Court deems appropriate and just in light of the circumstances;

3. That the Court award the plaintiff up to three times the amount of actual damages sustained together with costs, interest and attorney's fees.

**THE PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,

Plaintiff, LimoLiner, Inc.,

By its Attorney,

Jonathon D. Friedmann, Esq.
BBO #: 180130
Erica F. Mastrangelo
BBO #: 661561
RUDOLPH FRIEDMANN LLP
92 State Street
Boston, MA 02109
(617) 723-7700

Dated: August 16, 2005

RECEIVED
JUN 08 2004



# BILL OF SALE

**VEHICLE IDENTIFICATION NUMBER**
2PCH33490X1012717

| MAKE | MODEL | YEAR |
|------|-------|------|
| Prevost | H3-45 | 1999 |

For the sum of $205,000.00, and/or other valuable consideration in the amount of $0.00, the receipt of which is hereby acknowledged, we did sell, transfer and deliver to:

**BUYER'S NAME**
LimoLiner, Inc.

**ADDRESS**
729 Boylston Street #600, Boston MA 02116

**BUYER'S SIGNATURE**
X _____     Date May 31 2004

We certify under penalty of perjury that: (1) the selling price and/or value consideration shown is true and correct, (2) we are the lawful owner(s) of the vehicle and (3) we have the right to sell it, and (4) we guarantee and will defend the title to the vehicle against the claims and demands of any and all persons arising prior to this date, and (5) the vehicle is free of all liens and encumbrances.

**SELLER'S NAME**
Setra of North America, Inc.

**ADDRESS**
6012-B High Point Road, Greensboro, NC 27407

**SELLER'S SIGNATURE**
X _____          Date June 1 2004

May 16 2005 11:56AM Firstgreen                    617-916-2974                p.4

05/06/2005    13:47    SETRA COACHES → 617 916 2974                    NO.691    P01

# ODOMETER DISCLOSURE STATEMENT

Federal and State law require that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

I state that the odometer now reads __152 002__ miles and to the best of my knowledge that it reflects the actual mileage of the vehicle described below, unless one of the following statements is checked.

☐ (1) I hereby certify that the odometer reading reflects the amount of the mileage in excess of its mechanical limits.

☐ (2) I hereby certify that the odometer reading is not the actual mileage. **WARNING – ODOMETER DISCREPANCY.**

| MAKE | BODY STYLE | YEAR MODEL | SERIES MODEL |
|------|-----------|-----------|--------------|
| Prevost | Coach | 1999 | H3-45 |
| VEHICLE IDENTIFICATION NUMBER | | LAST PLATE STATE YEAR NUMBER | |
| 2PCH33490X1012717 | | | |

Setra of North America, Inc.
Seller's Name
6012-B High Point Road
Seller's Address
Greensboro, NC 27407
City, State, Zip

_Seller's Signature_

_Buyer's Signature_
(Acknowledging Mileage Reading as Certified)

LimoLiner, Inc.
Buyer's Name
729 Boylston Street #600
Buyer's Address
Boston MA 02116
City, State, Zip

June 3 2004
Date of Certification

## ALTERATIONS OR ERASURES VOID THIS FORM

# LimoLiner Inc
**74 Maple St**
**Stoughton MA 02072**
**(617) 916 2973**

June 4, 2005

Setra of North America
6012B High Point Road
Greensboro, NC 27407

Attention: Robert Jones, Vice President

RE:    <u>Prevost H3 – 45; Vehicle Identification No.: 2PCH33490X1012717</u>

Dear Mr. Jones:

On May 31, 2004, Limoliner, Inc. purchased the above Motorcoach from your company for a purchase price of $205,000.00. At the time of purchase, a certification was given to us indicating that the actual mileage on the vehicle was 152,002.

As you and your company was aware, it was Limoliner's intent, after purchase of this vehicle, to convert the vehicle to a luxury coach for eventual use in the business of deluxe passenger transportation between Boston and New York. Upon purchase of the vehicle, a complete refit of the interior was undertaken at Amadas Coach in Moneta, Virginia. This refitting of the interior cost approximately $155,000.00 and included the installation of onboard entertainment, power, plumbing, communications equipment, kitchen, washroom and luxury seating.

After this refitting of the Motorcoach, it was placed into service on or about September 1, 2004. Since being placed in service, the vehicle has had repeated mechanical failures. These mechanical failures have occurred from the time of delivery to the present. In April of 2005, a complete irrepairable failure of the engine transmission system occurred. It was necessary for us to have the system replaced by Power Products which, as I am sure you are aware, is a division of Detroit Diesel. At the time of this servicing, it was determined by Detroit Diesel from the onboard ECM monitor that the actual mileage on the Motorcoach was 507,471 miles. Our company, prior to this servicing, had utilized the vehicle for only 98,000 miles as shown on the odometer. Thus, the actual mileage at the time that we purchased the vehicle from you was approximately <u>409,000 miles not the 152,002 miles</u> as represented.

The additional 257,000 miles of use of the vehicle in excess of your certified figure constitutes a material misrepresentation of fact to us. As you are aware, a vehicle of this type with over 400,000 miles is significantly different than a vehicle of this type with merely 150,000 miles. Had we been informed of the true facts and circumstances regarding this vehicle, we would never have purchased the vehicle nor would we have spent the sums outlined above in refitting the vehicle for its intended use. The vehicle is now unfit for its intended use and continues to have mechanical problems consistent with a vehicle with its actual use, but not consistent with a vehicle as represented to us.

To date, in addition to the cost of refitting, we have also incurred repair costs of $25,964 and loss of revenue of $26 760 during the periods of time that the vehicle was out of use for repairs.

Setra of North America
June 2, 2005
Page 2 of 2

This vehicle is not as represented and is not what we wanted or contracted for. This vehicle will have to be replaced as soon as possible with a corresponding vehicle with lifetime and performance similar to that which we believed we were purchasing. Your company must also be responsible for meeting the costs and for making good on the other damages to which we are entitled as a matter of law.

Your attention is drawn to both the Federal and State Statutes regulating the sale of vehicles and odometer readings. The Truth in Mileage Act which can be found at Title 49 of the United States Code, Section 32705 prohibits the failure to honestly and accurately disclose the cumulative mileage of a vehicle. It is, and continues to be, our desire to attempt to resolve this dispute with your company amicably. However, in order to do so, it will require prompt attention from you and a commitment from your business to do what is right to resolve these issues.

Upon your receipt of this letter, please contact me so that we can arrange to have the appropriate executive from your company (with authority to deal with this situation) come to Boston to meet with me and my advisors so that a reasonable resolution of this matter can be reached. Be advised that I am marking this matter ahead in my calendar for a period of fourteen (14) days. If within this 14 day period I have not heard from you and if substantial steps towards resolution of this matter have not been made, then it will be necessary for me to proceed to seek to enforce the legal rights and remedies available to me pursuant to both Federal and State Law.

As mentioned above, it is my sincere desire that this matter can be resolved amicably. However, if a show of good faith from you and your company is not forthcoming within the stated time period, it will be necessary for me to seek enforcement of those rights and seek appropriate damages.

Your prompt attention is greatly appreciated.

Very truly yours,

Fergus McCann

FM/gmy
cc:    Jonathon D. Friedmann, Esq.
       Peter Pescatore
       John Spellings



LUXURY COACHES

SETRA of North America, Inc.
6012B High Point Road
Greensboro, NC 27407
Office Tel.:     336-878 5400
                800-882-8054
Fax:            336-878-5403
Web Site: www.setrausa.com

July 22, 2005

Mr. Peter Pescatore
Chief Executive Officer
LimoLiner
74 Maple Street
Stoughton, MA 02072

RE:   Prevost H3-45 VIN 2PCH33490X1012717

Dear Mr. Pescatore,

Further to our meeting last week, I would like to provide you with the following information relative to the above referenced vehicle.

We have reviewed the issues you identified in our meeting as well as the repair invoices you have sent to us. The majority of repairs that occurred between October, 2004 and early 2005 are, in our opinion, of a routine nature. The most critical repair was the failed transmission in May, 2005. Although unfortunate this type of failure can occur with pre-owned equipment and as you purchased the vehicle without any warranties as noted on the sales documents we cannot cover this repair.

Notwithstanding, we would like to make the following proposal as sign of goodwill. As we have mutually discovered, the mileage on the unit was approximately 100,000 miles greater than anticipated (due to an electronic odometer changeout by the previous owner). As this represents an approximate two year difference (assuming a 50,000 mile/year average) Setra is prepared to provide LimoLiner with a credit of $30,000 as a goodwill payment in recognition of potential depreciation. We continue to stress that the mileage difference was unknown to us at the time of the trade-in from the prior customer and as such we logically relied on their odometer disclosure statement.

We trust that you will find this offer acceptable. Please provide your concurrence by contacting me directly to confirm.

Sincerely,

Patrick J. Scully
President and CEO

Cc:   C. Crassweller
      D. King

# EXHIBIT B

**State of Massachusetts**          **County of Norfolk**          **Superior Court Court**

Case Number: 05-01421

Plaintiff:
vs.
Defendant:

For:
    Rudolph Friedmann LLP

Received by Great Opportunities on the 19th day of August, 2005 at 3:01 pm to be served on SETRA OF NORTH AMERICA INC.....6012-B Highpoint Rd., Greensboro NC, 27407. I, **GARY SMITH JR**, being duly sworn, depose and say that on the 25th day of A___, 2005 at ___ :55 a.m., executed service by delivering a true copy of the **Summons, Complaint** in accordance with state statutes in the manner marked below:

( ) **PUBLIC AGENCY:** By serving _____ as _____ of the within-named agency.

( ) **SUBSTITUTE SERVICE:** By serving _____ as _____

(X) **CORPORATE SERVICE:** By serving _Kenneth Nall_ as _Legal Coordinator_

( ) **OTHER SERVICE:** As described in the Comments below by serving _____ as _____

( ) **NON SERVICE:** For the reason detailed in the Comments below.

**COMMENTS:** _____
_____
_____
_____

I certify that I have no interest in the above action, am of legal age and have proper authority in the jurisdiction in which this service was made.

Subscribed and Sworn to before me on the _22_ day of _August_, _2005_ by the affiant who 's personally known to me.

_____
NOTARY PUBLIC

CHERI L. SMITH
NOTARY

PROCESS SERVER # _N/A_
Appointed in accordance
  with State Statutes

**Great Opportunities**
4605 Pine Needle Ct.
Fayetteville, NC 28314
(910) 489-2301

Our Job Serial Number: 2005000051

Copyright © 1992-2005 Database Services, Inc. - Process Server's Toolbox V6.5j

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on ............................., 200⁵, I served a copy of the within summons, together with a copy of the complaint in this action, upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 :d) (1-5):

........................................

........................................

Dated: 2-2₄-₆ , 200 5

**N. B.    TO PROCESS SERVER:-**
**PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.**

20 P4 , 20 ₀5.

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.          SUPERIOR COURT
                      CIVIL ACTION
                      NO. ...................

................. Plaintiff

v.

................. Defendant

SUMMONS

(Mass. R. Civ. P.4)

# EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LIMOLINER, INC.,<br>**Plaintiff** | ) | **05 - 11888 JLT** |
| | ) | |
| vs. | ) | **NO.** |
| | ) | |
| SETRA OF NORTH AMERICA, INC.,<br>**Defendant** | ) | |
| | ) | |

RECEIPT # _6699B_
AMOUNT $ _250.00_
SUMMONS ISSUED _MA_
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _M.P._
DATE _9/19/05_

MAGISTRATE JUDGE _JLA_

**NOTICE OF REMOVAL**

**TO:    THE CHIEF JUDGE AND JUDGES OF THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

Pursuant to 28 U.S.C. §1441(a), Setra of North America, Inc. ("Setra"), hereby files this Notice of Removal. In support of its Notice of Removal, Setra states the following:

1.    As appears from Civil Action No. 05-1421 on file in the Norfolk Superior Court, the plaintiff filed a Complaint on August 17, 2005. Setra received a summons and complaint by Federal Express on or about August 23, 2005. The Complaint seeks venue in the Superior Court Department, County of Norfolk, Commonwealth of Massachusetts. Copies of the Complaint and Summons are attached hereto as **Exhibit "A"** and made a part hereof.

2.    As the plaintiff alleges in its Complaint, this is a commercial transaction dispute relating to allegations of an inaccurate or misleading odometer reading. The plaintiff alleges that it is a corporation duly organized under the laws of the Commonwealth of Massachusetts and that its principle place of business is located in Stoughton, Massachusetts. Plaintiff further alleges that SETRA has its principal place of business in Greensboro, North Carolina. See **Exhibit "A,"** paragraphs 1, 2. Setra is duly incorporated under the laws of the State of Maine.

3.     The plaintiff's Complaint alleges that it suffered damages as the result of its purchase of a bus that had an incorrect odometer reading when it purchased the vehicle from the defendant in June of 2004 and thereafter.  Plaintiff alleges a variety of theories all centered upon the incorrect and/or misleading representations relating to the mileage of the vehicle at the time of sale.

4.     This Court has original jurisdiction over the action pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the plaintiff and the defendant and because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5.     As evidence of the amount in controversy, attached hereto as **Exhibit "B"** and made a part hereof is correspondence from Limoliner directed to the defendant dated July 26, 2005, in which it demands settlement in excess of $386,000.

6.     Pursuant to 28 U.S.C. § 1446(b), this petition is being filed with this Court within 30 days after purported service of the Summons and Complaint was attempted upon Setra.

7.     This Notice of Removal was served on counsel of record via regular mail on September 15, 2005, in accordance with 28 U. S. C. § 1446(d).

8.     A true copy of this Notice of Removal was filed via regular mail on September 15, 2005 with the Clerk of the Norfolk Superior Court.

WHEREFORE, Setra prays for removal of the above-captioned matter from the Norfolk Superior Court, Norfolk County, Commonwealth of Massachusetts, to the United States District Court for the District of Massachusetts.

SETRA OF NORTH AMERICA, INC.,

By its Attorneys,

_____
James M. Campbell  BBO # 541882
Campbell Campbell Edwards & Conroy, PC
One Constitution Plaza,
Boston, MA  02129
(617) 241-3000

William J. Cremer
(pending admission *pro hac vice*)
Thomas R. Pender
(pending admission *pro hac vice*)
Cremer, Kopon, Shaughnessy & Spina, LLC
180 North LaSalle Street, Suite 3300
Chicago, IL  60601
Tel:  (312) 726-3800
Fax: (312) 726-3818

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the following counsel of record for Limoliner, Inc., via _Mail_ on _September 16_ , 2005:

    Jonathan D. Friedman, Esq.
    Rudolph Friedman LLP
    92 State Street
    Boston, MA 02109

_____
James M. Campbell

3

# EXHIBIT D

WJC/TRP/maz                                                           381-2-1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **LIMOLINER, INC.,** | ) | |
|     **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **NO. 05-11888** |
| | ) | |
| **SETRA OF NORTH AMERICA, INC.,** | ) | |
|     **Defendant.** | ) | |

### AFFIDAVIT OF PATRICK J. SCULLY

Patrick J. Scully, being first duly sworn upon oath, states as follows:

1.  I have personal knowledge of the following facts and could testify competently thereto if called upon to do so.

2.  I am currently the President and Chief Executive Officer of SETRA OF NORTH AMERICA, INC. ("SETRA"), and have held that position for 4 years.

3.  SETRA is a corporation duly organized under the laws of the State of Maine, and has been incorporated under the laws of the State of Maine since 1979.

4.  SETRA services both United States and Canadian markets with used and new motorcoaches.

5.  On or about June 3, 2004, SETRA purchased the motorcoach with Vehicle Identification Number 2PCH33490X1012717 as a "trade-in" from a non-party, Upstate Transit, Inc., of Saratoga Springs, New York.

6.    At the time of the purchase of the motorcoach from Upstate Transit, Inc., Upstate Transit, Inc., provided SETRA with an Odometer Disclosure Statement, indicating the mileage of the motorcoach was 151,981 miles at the time of the transaction.    A true and correct copy of this Odometer Disclosure Statement is attached as an exhibit to SETRA's Motion to Dismiss.

7.    SETRA relied on Upstate Transit, Inc.'s Disclosure Statement in good faith when it subsequently sold the motorcoach to LIMOLINER.

8.    The Odometer Disclosure Statement issued by SETRA to LIMOLINER was based on the Disclosure Statement SETRA received from Upstate Transit, Inc.

9.    No adjustment was made to the odometer by SETRA at any time.

10.    SETRA was unaware of any mileage discrepancy of the motorcoach at the time of its sale to LIMOLINER.

FURTHER AFFIANT SAYETH NAUGHT.

By:    _____
        Patrick J. Scully, President
        SETRA OF NORTH AMERICA, INC.


SUBSCRIBED AND SWORN to before me
this 23rd day of September, 2005.

_____
    NOTARY PUBLIC.

2

# EXHIBIT E

# ODOMETER DISCLOSURE STATEMENT-TRADE IN

Federal and State law require that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

I state that the odometer now reads ___151,981___ miles and to the best of my knowledge that it reflects the actual mileage of the vehicle described below, unless one of the following statements is checked.

☐ (1) I hereby certify that the odometer reading reflects the amount of the mileage in excess of its mechanical limits.

☐ (2) I hereby certify that the odometer reading is **not** the actual mileage. **WARNING – ODOMETER DISCREPANCY.**

| MAKE | BODY STYLE | YEAR | SERIES MODEL |
|------|-----------|------|--------------|
| Prevost | Coach | 1999 | H3-45 |
| **VEHICLE IDENTIFICATION NUMBER** | | **LAST PLATE STATE YEAR NUMBER** | |
| 2PCH33490X1012717 | | | |

Upstate Transit, Inc.
(Seller's Name)                         (Seller's Signature)
P.O. Box 325, Geyser Road
(Seller's Address)
Saratoga Springs, NY 12866
City, State, Zip

(Buyer's Signature – Acknowledging Mileage Reading as Certified)
Setra of North America, Inc.
(Buyer's Name, Hand Printed)

6012B High Point Road
(Buyer's Address)
Greensboro, NC 27407
City, State, Zip

12/17/03
(Date of Certification)

# ALTERATIONS OR ERASURES VOID THIS FORM

# EXHIBIT F

# SETRA

SALES DEPARTMENT
ROBERT JONES
VICE PRESIDENT — SALES & MARKETING

June 30, 2005

*Chris,*
*Pls confirm receipt.*
*Thank you,*
*Beltina*

LimoLiner, Inc.
74 Maple St.
Stoughton, MA 20272

Attention: Fergus McCann

RE: **Prevost H3-45; Vehicle Identification No.: 2PCH33490X1012717**

Dear Mr. McCann,

Thank you for your letter of June 4, 2005 regarding the purchase of unit # UP12717. We have thoroughly researched your claim of mileage inconsistency with this vehicle and would like to provide you with the following information.

Setra accepted the vehicle purchased by LimoLiner as a "trade-in" from Upstate Transit, Inc. Upstate provided an Odometer Disclosure Statement indicating mileage of 151,981 miles at the time of the transaction. Setra relied on Upstate's Disclosure Statement in good faith. No adjustment to the odometer was made by Setra at any time. The Odometer Disclosure Statement issued by Setra to LimoLiner was based on the Disclosure Statement we received from Upstate.

We have reviewed the maintenance records from Upstate as well as other major component vendors (engine and transmission) that confirms the mileage certification that was provided to us by Upstate and that we in turn provided to Limoliner (see attached supporting documentation).

Specifically, we have found that the engine ECM was replaced on November 3, 2000 by Atlantic Detroit Diesel – Allison in Latham, NY (Albany area). It has become apparent that this service provider did not set the mileage on the engine ECM to the correct mileage at the time of the repair, resulting in the initial mileage discrepancy. We have requested that Atlantic Detroit Diesel – Allison review their records and provide an explanation for the mileage recordings on their claims for warranty work during the period between November 2000 and December 2001. A response is expected by July 5, 2005.

We have further reviewed the Federal and State Statutes regulating odometer readings. The Federal Odometer Act requires all persons transferring a motor vehicle to give an accurate, written odometer reading to the purchaser. In order to base a claim under the Act, it is necessary to show a violation of the disclosure requirements (i.e. providing an inaccurate odometer reading), and an intent to defraud.

The State Statutes we examined are substantially the same. They either require a claimant to demonstrate intent to defraud, or proof that the defendant actually altered the odometer.

6012-B HIGH POINT ROAD    •    GREENSBORO, NC 27407    •    800.882.8054    •    WWW.SETRA-COACHES.COM
A BRAND OF DAIMLERCHRYSLER



SALES DEPARTMENT
ROBERT JONES
VICE PRESIDENT – SALES & MARKETING

Setra is very concerned that a vehicle has not performed in accordance with a customer's expectations, and we are prepared to meet with you to discuss these issues. However, Setra acted at all times in good faith, and reasonably based its Odometer Disclosure Statement on the information provided by Upstate. We made no misrepresentations of any kind to LimoLiner, and we do not believe that a claim can be made on the basis of any of the applicable Federal or State Statutes regarding odometer readings.

We look forward to reviewing this information with you.

Yours truly,

Robert Jones
Vice President

Cc: Crassweller, Scully, King

**EXHIBIT G**

WJC/TRP/maz                                                                          381-2-1

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MASSACHUSETTS

LIMOLINER, INC.,                    )
     **Plaintiff,**                 )
                                   )
**vs.**                              )         **NO. 05-11888**
                                   )
SETRA OF NORTH AMERICA, INC.,        )
     **Defendant.**                 )

### <u>AFFIDAVIT OF CHRISTOPHER L. CRASSWELLER</u>

Christopher L. Crassweller, being first duly sworn upon oath, states as follows:

1.    I have personal knowledge of the following facts and could testify competently thereto if called upon to do so.

2.    I am currently General Counsel and the Secretary of Orion Bus Industries, a non-party to this matter.  Orion Bus Industries owns SETRA, and is responsible for the legal affairs of SETRA.

3.    I have received and carefully reviewed the return of process attached as **Exhibit "B"** to SETRA's Motion to Dismiss.

4.    The individual who is shown on the return of service to have received the summons and complaint on August 20, 2005, is Kenneth Nall.

5.    Kenneth Nall is not an employee of SETRA.

6.    Kenneth Nall is not an officer of SETRA.

7.    Kenneth Nall is not a director of SETRA.

1

8.     Kenneth Nall is not SETRA's president, treasurer, clerk, resident agent, cashier, secretary, or other officer in charge of the business at SETRA's principal place of business in North Carolina.

9.     Kenneth Nall is not a member of the SETRA corporation.

10.     Kenneth Nall is not a managing or general agent of SETRA.

11.     Kenneth Nall is not an agent authorized by appointment at SETRA or by law to receive service of process.

FURTHER AFFIANT SAYETH NAUGHT.

By: _____

Christopher L. Crassweiler

SUBSCRIBED AND SWORN to before me
this 22ⁿᵈ day of September, 2005.

_____
NOTARY PUBLIC.

PATRICIA MARIE DOYLE, Notary Public, Regional
Municipality of Peel, limited to the attestation of the
Instruments and the taking of affidavits for
Orion Bus Industries and Orion Bus Industries Inc,
Expires April 30, 2007.

Doc. #105579

2

# EXHIBIT H

# SETRA

A DaimlerChrysler Company

# AGREEMENT TO PURCHASE

May 25, 2004
Date

LimoLiner, Inc.
Purchaser Name

729 Boylston, Suite 600
Street Address

Boston, MA 02116
City, State, Zip

617-916-2973    617-916-2974
Bus. Phone    Fax No.

Please enter my order for the following:  ☐ New  ☒ Used  Year  1999  Make  Prevost

Model or series  H3-45  Body Type    Color  Blue/gray  V.I.N.  2PCH33490X1012717

To be delivered on or about  May 28, 1999  Salesperson  Robert Jones  Stock No.  UP12717

| | |
|---|---|
| Cash Delivered Price of Vehicle | $205,000.00 |
| | |
| Coach will be serviced prior to delivery. | |
| Coach will have a current DOT inspection sticker prior to departure. | |
| All except for front two sets of passenger seats will be removed prior to delivery. | |
| | |
| **No Warranty** | |

| | | | |
|---|---|---|---|
| Used Vehicle Trade In -- NO TRADE IN | | Total Price of Unit | $205,000.00 |
| Make of Trade In | | Down Payment | $0.00 |
| Year    Model | | Unpaid Cash Balance due on Delivery | $205,000.00 |
| V.I.N. | | | |
| Balance Owed To: | | | |
| Address/Contact | | | |
| Used Trade In Allowance | $ | | |
| Balance Owed on Trade In | $ | | |
| Deposit or Credit Balance | $ | | |
| Down Payment | $ | | |

Attention used coach buyers: If you are buying a used coach with this contract, federal regulations may require a special buyers guide be displayed on the window of the vehicle. The information you see on the window form for this vehicle is part of the contract. Information on the window form overrides any contrary provisions in the contract of sale.

The front and back of this Order comprise the entire agreement affecting this purchase and no other agreement or understanding of any nature concerning same has been made or entered into, or will be recognized. I hereby certify that no credit has been extended to me for th epurpose of this motor vehicle except as appears in writing on the face of this agreement. I have read the matter printed on the back hereof and agree to it as part of this order the same as if it were printed above my signature.

Purchaser's Signature, Fergus McCann    Setra Sales Representative    Setra President

Paid Plus June 1st 2004

# TERMS AND CONDITIONS

1 All prices stated in this Agreement are subject to change to conform to prices of SETRA of North America, Inc., hereinafter called the "Seller", in effect at the time the motor coach(es) ordered under this Agreement are shipped, and will be increased or decreased if Seller changes its prices before shipment. Seller shall give Buyer written notice of any such increase or decrease in prices, and Buyer shall have the privilege of terminating this order within ten (10) days thereafter for any increase in the sales price only. If this Agreement is terminated because of a sales price increase, Seller shall return Buyer's cash deposit, if any.

2 This Agreement will not be binding on Seller until approved and accepted by Seller in writing indicated by the signature of the president.

3 This Agreement is not assignable or transferable, without seller's consent.

4 If payment of any part of the price is deferred until after delivery, Buyer shall execute prior to delivery a security agreement and financing statement in a form required by Seller to evidence and secure the amount deferred.

5 If the Buyer fails to accept or take delivery of the equipment within 30 days after the date that the coach is available for delivery, at Seller's option the Buyer shall be obligated to pay interest, at Seller's maximum current rate of interest on conditional sales contracts, on the unpaid balance commencing on the thirty-first day after the date on which the motor coach became available for delivery. The Seller, at its option, by notice in writing to the Buyer, may terminate this Agreement and retain the deposit as liquidated damages and, not as a penalty, and the Seller may take what other additional remedies that it may have at law.

6 This Agreement shall not be subject to termination by either Buyer or Seller, except as provided herein.

7 Buyer shall be in default under this Agreement if it (1) becomes bankrupt, insolvent, or unable to meet its financial obligations as they materialize during the term of this Agreement, without prejudice to any other rights of Seller at the time of such termination. Upon default, Seller may pursue all its rights at law ad shall be entitled to all costs of collection, including reasonable attorneys fee.

8 Without notice to Buyer, Seller may at any time make changes or improvements in the model and/or design of the motor coach(es) or any part thereof, provided that such changes do not adversely affect quality, but Seller shall have no obligation to make any changes or improvement either prior to or after delivery.

9 Seller represents that it is the lawful owner of and has full right to sell the motor coach(es) sold under this Agreement, and that it has good title to the motor coach(es), free and clear of any and all liens and encumbrances.

10 Seller shall not be liable for any damages resulting from, and Buyer shall not have the right to terminate this Agreement for Seller's nonperformance or delay in performance due in whole or in part to any causes beyond Seller's control, including without limitation, acts of God, acts of the public enemy, acts of the Government, fires, floods, windstorms, tornadoes, wars, riots, insurrections, strikes, lockouts, sitdowns, slowdowns, or other labor trouble causing cessation or interruption of operations, or inability to procure labor or materials. This agreement shall be deemed suspended so long as and to the extent that any such cause prevents or delays Seller's performance.

11 Risk of loss to each motor coach sold hereunder shall pass from the Seller to Buyer at the time that each such motor coach is accepted by Buyer. Title to each motor coach sold hereunder shall likewise pass from Seller to Buyer at the time that each such motor coach is accepted by Buyer, unless, Seller shall not then have received the full and entire purchase price due for each such motor coach. Buyer agrees to execute a suitable document on a form APproved by Seller evidencing its acceptance of each motor coach sold hereunder.

12 The price stated herein shall be subject to an additional charge to cover any existing or future sales, use or similar tax or other charge which Seller must collect under applicable law.

13 This Agreement shall be governed by and shall be construed in accordance with the laws of the State of Maine.

14 SELLER'S LIMITED WARRANTY

   a. See attached warranty policy.

   b. Setra obligation is to repair or replace free of charge any part which SETRA deems defective, provided that all defective items on which warranty claims asserted are returned, postage prepaid to SETRA, accompanied by SETRA warranty form fully completed with a written explanation of the claimed defects and circumstances of failure

   c. DRIVE COMPONENTS, I.E. TRANSMISSION AND ENGINE, MANUFACTURED IN USA CARRY ONLY MANUFACTURER'S WARRANTY, NOT SETRA.

   d. SETRA WARRANTY SHALL NOT APPLY IF SAID COACH, ITS EQUIPMENT OR ACCESSORIES HAS BEEN:

     1. Subject to abuse, neglect or damage from an accident;
     2. Operated or maintained or installed in a manner contrary to that directed in the Operator's Manual, or
     3. Altered, modified, changed, reworked or replaced in a manner which would affect serviceability.

   a. SETRA EXPRESSLY DOES NOT WARRANT MAINTENANCE ITEMS:

     including batteries, glass, tires, filters, ignition and tune-up parts, belts lubricants, light bulbs, sealed beam units, antifreeze, and paint unless contaminated or damaged by a failure of a warranted pat.

   f. ENFORCEMENT OF THIS WARRANTY SHALL BE THE SOLE AND EXCLUSIVE REMEDY OF BUYER. SETRA SHALL NOT BE LIABLE FOR DIRECT, INDIRECT, CONSEQUENTIAL OR OTHER DAMAGES, INCLUDING ATTORNEYS FEES WITH RESPECT TO A CLAIM REGARDING THE SALE OR SAID COACH.

   g. No person, firm or corporation is authorized to assume for SETRA any other liability in connection with this Warranty or the sale of this coach.

   This Agreement contains the entire agreement relating to the purchase of said motor coach(es) and Buyer agrees that no other representations or understandings exist as to this purchase. No modification or termination of this Agreement, nor any waiver of its terms, shall bind seller unless in writing and signed by Seller's authorized representative.

# EXHIBIT I



A DaimlerChrysler Company

Setra of North America, Inc.
6012-B High Point Road
Greensboro, NC 27407
336.878.5400

## VEHICLE/EQUIPMENT DELIVERY REPORT

SOLD TO:  LimoLiner, Inc.

729 Boylston Street #600

Boston MA 02116

MODEL:  1999 Prevost H3-45

VIN#  2PCH33490X1012717

SHIP TO:    Same as "Sold To"

FOB   Greensboro, North Carolina

### ACKNOWLEDGMENT

Customer, by signing this report, acknowledges that:

1) Delivery Location    Greensboro          Guilford          North Carolina
                        City                County            State

2) Delivery Time        06.01.04
                        Month/Day/Year      Hour [AM/PM]

3) Vehicle Mileage      152 002

4) Customer accepts delivery of the vehicle with specified equipment and has been advised to study the operating manuals and review the warranty policy before operating the vehicle.

### WARRANTY INFORMATION

|   |   |
|---|---|
|   | Setra Standard 24 months/200,000 mile Warranty for New Coach |
|   | Allison Transmission Warranty Extension (will now total 5 years) |
|   | Detroit Diesel Power Protection Warranty Extension (will now total 5 years or 500,000 miles) |
|   | Setra Limited 30 day Pre-Owned Coach Warranty (excludes engine & transmission) |
| X | No Warranty Coach is "As is / Where is" |

                                    LimoLiner, Inc.
                                    Customer

Date:      06.01.04         By: _____
                                    Signature

                                    FERGUS McCAIN
                                    Printed Name

                                    PRESIDENT
                                    Title

(This form must be completed, signed by customer and returned to Setra of North America, Inc., 6012-B High Point Road, Greensboro, NC 27407 to activate the vehicle warranty, if applicable.)