**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| LIMOLINER, INC., | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. 05-11888 |
| | ) | |
| SETRA OF NORTH AMERICA, INC., | ) | |
|     Defendant. | ) | |
| SETRA OF NORTH AMERICA, INC., | ) | |
|     Third-Party Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| UPSTATE TOURS, INC. and UPSTATE | ) | |
| TRANSIT, INC., | ) | |
|     Third-Party Defendants. | | |

**DEFENDANT SETRA OF NORTH AMERICA, INC.'S**
**THIRD-PARTY COMPLAINT**

NOW COMES the Defendant/Third-Party Plaintiff, SETRA OF NORTH AMERICA, INC. (hereinafter referred to as "SETRA"), a Maine corporation, by and through its attorneys, CAMPBELL, CAMPBELL, EDWARDS & CONROY, PC, and CREMER, KOPON, SHAUGHNESSY & SPINA, LLC (pro hac vice), and for its Third-Party Complaint against UPSTATE TOURS, INC., and UPSTATE TRANSIT, INC. (collectively hereinafter referred to as "UPSTATE"), states as follows:

1.     On or about August 17, 2005, plaintiff LIMOLINER, INC. (hereinafter referred to as "LIMOLINER") filed a Complaint in the Norfolk Superior Court seeking damages for injuries it allegedly sustained as a result of its purchase of a used motorcoach from SETRA on or about May 31, 2004.  (A true and correct copy of the Complaint is attached hereto as **Exhibit A**.)

2.     On May 15, 2006, SETRA filed its Answer and Affirmative Defenses to the Complaint, denying all material allegations against it.

3.      In its Complaint, LIMOLINER alleges that SETRA provided an inaccurate written certification to LIMOLINER stating that the actual mileage of the motorcoach was 152,0002 miles and that, in April 2005, LIMOLINER learned that the actual mileage of the motorcoach was approximately 409,000.

4.      LIMOLINER'S Complaint contains counts for breach of contract, breach of express and implied warranties, fraudulent inducement, misrepresentation, violation of the Massachusetts Consumer Protection Act (Chapter 93A, Section 11), violation of the Massachusetts Odometer Tampering Statute (Chapter 266, Section 141, *et seq.*), and violation of the federal Odometer Disclosure Act (49 U.S.C. § 32705).

5.      SETRA received the motorcoach at issue in December 2003 from UPSTATE in a transaction in which SETRA sold new motorcoaches to UPSTATE and accepted several trade-ins of used motorcoaches.  The motorcoach at issue was one of the "trades."  Pursuant to the terms of the applicable agreements, this transaction is governed by the law of Maine. (See Agreement to Purchase, Invoice, and Pre-Owned Coach Trade In Agreement, attached as **Exhibits B-D**, respectively.)

6.      At the time of the sale to SETRA, UPSTATE provided SETRA with an Odometer Disclosure Statement affirming that the mileage on the motorcoach at issue was 151,981 miles. (A true and correct copy is attached hereto as **Exhibit E**.)

7.      SETRA relied on UPSTATE'S Odometer Disclosure Statement when it accepted the coach in trade and when it sold the motorcoach to LIMOLINER several months later.

8.      SETRA never made an adjustment to the motorcoach's odometer.

9.      SETRA had no knowledge that a mileage discrepancy existed with the motorcoach at the time of its sale to LIMOLINER.

10.     If the mileage on this vehicle, as indicated on its odometer, is inaccurate, this is the result of changes made to the vehicle odometer and ECM by UPSTATE.

11.     SETRA has denied, and continues to deny, any liability to LIMOLINER.

## COUNT I

### (Breach of Contract)

12.     SETRA reaffirms and realleges the allegations in paragraphs 1 through 11 and incorporates them by reference.

13.     SETRA and UPSTATE had a valid and binding contract that included the sale of new motorcoaches and the trade-in of used motorcoaches.

14.     UPSTATE breached the contract by not selling to the plaintiff the vehicle in question in accordance with the terms and conditions of the contract.

15.     As a result of UPSTATE'S breach of the contract with SETRA, SETRA has been caused to suffer damages and injury.

## COUNT II

### (Breach of Express Warranty)

16.     SETRA reaffirms and realleges the allegations in paragraphs 1 through 15 and incorporates them by reference.

17.     UPSTATE represented that the mileage of the odometer of the motorcoach was accurately reflected in the Odometer Disclosure Statement.

18.     UPSTATE breached this express warranty regarding the mileage of the motorcoach.

19.     The mileage stated by UPSTATE to SETRA became an affirmation, fact or promise, which was part of the basis of the bargain between SETRA and UPSTATE.

20.    UPSTATE made these express warranties knowingly, intentionally, or negligently or with reckless disregard of the truth thereof.

21.    SETRA relied upon the representations of UPSTATE.

22.    As a result of UPSTATE'S breach of the express warranty, SETRA has been caused to suffer damages and injury.

## COUNT III

### (Breach of Implied Warranty of Merchantability)

23.    SETRA reaffirms and realleges the allegations in paragraphs 1 through 22 and incorporates them by reference.

24.    UPSTATE represented criteria as to the merchantability of the motorcoach in question.

25.    UPSTATE warranted that the motorcoach would pass without objection in the trade under the contract description, which included the mileage stated on the Odometer Disclosure Statement.

26.    The motorcoach did not conform to the contract description and would not pass without objection in the trade.

27.    The discrepancy in the mileage meant that the motorcoach was not fit for the ordinary purpose in which it was used.

28.    The actions of UPSTATE were in violation of the implied warranty of merchantability.

29.    UPSTATE'S breach of the implied warranty of merchantability has caused SETRA to suffer damages and injury.

## COUNT IV

### (Breach of Implied Warranty of Fitness for a Particular Purpose)

30.    SETRA reaffirms and realleges the allegations in paragraphs 1 through 29 and incorporates them by reference.

31.    SETRA made known to UPSTATE prior to its purchase that it was purchasing the motorcoach in question for a particular purpose.

32.    UPSTATE had reason to know the particular purpose for which SETRA intended to use the motorcoach in question.

33.    SETRA relied on UPSTATE'S skill or judgment to select or furnish an appropriate motorcoach for the intended use.

34.    The motorcoach purchased by SETRA from UPSTATE was not fit for the particular use in question.

35.    As a result of the motorcoach not being fit for the particular use in question, SETRA suffered damages and injury.

## COUNT V

### (Fraud in the Inducement)

36.    SETRA reaffirms and realleges the allegations in paragraphs 1 through 35 and incorporates them by reference.

37.    As set forth above, UPSTATE made material factual representations to SETRA prior to the purpose of the motorcoach in question in order to induce SETRA to purchase the motorcoach.

38.     The material statements of fact made by UPSTATE to SETRA to induce SETRA to purchase the motorcoach in question were knowingly false or made with reckless disregard of the truthfulness thereof.

39.     SETRA justifiably relied on the material factual representations made by UPSTATE to SETRA.

40.     But for the material factual representations made by UPSTATE to SETRA, the motorcoach in question would not have been purchased by SETRA.

41.     As a result of SETRA's reasonable reliance on the material misrepresentations of fact made by UPSTATE, SETRA was caused to change its position and was injured thereby.

## COUNT VI

### (Fraudulent Misrepresentation)

42.     SETRA reaffirms and realleges the allegations in paragraphs 1 through 41 and incorporates them by reference.

43.     As set forth above, UPSTATE made false representations to SETRA.

44.     These false representations were of a material fact, namely the mileage of the motorcoach in question.

45.     UPSTATE made these false representations with knowledge of their falsity or in reckless disregard of whether they were true or false.

46.     UPSTATE made these false representations for the purpose of inducing SETRA to rely upon them.

47.     SETRA did reasonably rely upon the representations of fact regarding the motorcoach and its mileage and was caused to suffer damages and injury.

## COUNT VII

### (Breach of Good Faith and Fair Dealing)

48.     SETRA reaffirms and realleges the allegations in paragraphs 1 through 47 and incorporates them by reference.

49.     Every contract has reputed thereupon an obligation of good faith and fair dealing. Good faith is required in the performance and enforcement of all agreements or duties.

50.     Failure to perform in good faith constitutes a breach of contract.

51.     UPSTATE violated and/or breached the obligation of good faith and fair dealing by misrepresenting to SETRA the motorcoach in question, the mileage of the motorcoach in question, and the suitability of the motorcoach in question for SETRA'S intended purposes.

52.     As a result of UPSTATE'S breach of its obligations of good faith and fair dealing to SETRA related to the motorcoach in question, SETRA has been caused to suffer damages and injury.

## COUNT VIII

### (Fraud/Deceit)

53.     SETRA reaffirms and realleges the allegations in paragraphs 1 through 52 and incorporates them by reference.

54.     As set forth above, UPSTATE made false representations to SETRA.

55.     These false representations were of a material fact, namely the mileage of the motorcoach in question.

56.     UPSTATE made these false representations with knowledge of their falsity or in reckless disregard of whether they were true or false.

57.    UPSTATE made these false representations for the purpose of inducing SETRA to rely upon them.

58.    SETRA did reasonably rely upon the representations of fact regarding the motorcoach and its mileage and was caused to suffer damages and injury.

## COUNT IX

### (Negligent Misrepresentation)

59.    SETRA reaffirms and realleges the allegations in paragraphs 1 through 58 and incorporates them by reference.

60.    As set forth above, UPSTATE made negligently false or misleading representations to SETRA.

61.    UPSTATE made these representations in the course of its business and for SETRA'S guidance in their business transaction.

62.    SETRA justifiably relied upon UPSTATE'S representations.

63.    SETRA has suffered pecuniary detriment as a result of this reliance.

## COUNT X

### (Violation of 29-A M.R.S.A. § 2106)

64.    SETRA reaffirms and realleges the allegations in paragraphs 1 through 63 and incorporates them by reference.

65.    The actions of UPSTATE as set forth above constitute a knowing, willful, intentional or negligent violation of § 2106.

66.    Pursuant to § 2106, UPSTATE'S actions also constitute an unfair trade practice under Title 5, Chapter 10 (the Maine Unfair Trade Practices Act).

67.     As a result of UPSTATE'S breach of 29-A M.R.S.A. § 2106, SETRA has been caused to suffer damages and injury.

### COUNT XI

**(Violation of 49 U.S.C. § 32705)**

68.     SETRA reaffirms and realleges the allegations in paragraphs 1 through 67 and incorporates them by reference.

69     The actions of UPSTATE in violation of 49 U.S.C. § 32705 have caused SETRA to suffer damages and injury.

WHEREFORE, Defendant/Third-Party Plaintiff, SETRA OF NORTH AMERICA, INC., prays that judgment be entered in its favor against UPSTATE TOURS, INC., and UPSTATE TRANSIT, INC., for all recoverable damages suffered by SETRA.

**SETRA OF NORTH AMERICA**

By their Attorneys,

/s/ *James M. Campbell*
James M. Campbell, BBO # 541882
Kiley M. Belliveau, BBO # 661328
CAMPBELL CAMPBELL EDWARDS & CONROY, PC
One Constitution Plaza
Boston, MA 02129
Tel. No.  (617) 241-3000
Fax. No.  (617) 241-5115

Thomas R. Pender, *pro hac vice*
William J. Cremer, *pro hac vice*
CREMER COPON SHAUGHNESSY & SPINA, LLC
180 North LaSalle Street, Suite 3300
Chicago, IL 60601
Tel:     (312) 726-3800

## <u>CERTIFICATE OF SERVICE</u>

I, Kiley M. Belliveau, of Campbell Campbell Edwards & Conroy, Professional Corporation, attorney for Setra of North America, Inc, hereby certify that on July 11, 2006, a true copy of the above document was served upon the following via the ECF system and First Class Mail:

Jonathon D. Friedmann, Esq.
Rudolph Friedmann LLP
92 State Street
Boston, MA 02109


/s/  *Kiley M. Belliveau*
Kiley M. Belliveau

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS:                          SUPERIOR COURT DEPARTMENT
                                     CIVIL ACTION NO.:

                                     **05  01421**

LIMOLINER, INC.,                    )
          PLAINTIFF,                )
                                    )
v.                                  )
                                    )
SETRA OF NORTH AMERICA, INC.,       )
          DEFENDANT.                )

## **COMPLAINT**

1.  The plaintiff LimoLiner, Inc. ("LimoLiner") is a corporation duly organized pursuant to law

    having a usual place of business at Stoughton, County of Norfolk, Commonwealth of

    Massachusetts.

2.  Setra of North America, Inc. ("Setra") is a corporation duly organized pursuant to law having

    a usual place of business at 6012-B High Point Road, Greensboro, North Carolina, 27407.

3.  Setra does business throughout the Unites States and Canada and holds it self out as, "one of

    the world's leading producers of luxury motorcoaches".

4.  Setra manufactures motorcoaches and is a reseller of pre-owned motorcoaches.

5.  Setra regularly and usually does business in Massachusetts, advertises in Massachusetts,

    delivers product into Massachusetts, sends mail to Massachusetts, transacts business in

    Massachusetts and communicates electronically within Massachusetts.

6.  This Court has jurisdiction over the defendant due to the Long Arm Jurisdiction and due to

    defendant's numerous and substantial business contacts within Massachusetts.

7.  As part of Setra's business practices, it sells pre-owned busses (coaches) throughout the

    United States which includes purchases made by entities in Massachusetts.

8. Setra in its advertising materials, relative to pre-owned coaches, states that the vehicles undergo, "a thorough inspection at Setra to ensure that the customer gets the best product available at a reasonable investment" and that, "all components of the vehicle requiring replacement are refurbished with genuine Setra parts ensuring that the customer will get all the quality and long life that they expect".

9. Setra in its advertisement claims that it operates, "a state of the art service facilities" that "incorporates sufficient diagnostic equipment"... so you can be confident that your Setra Coach will be running smoothly and profitably whenever you need it".

10. The plaintiff, LimoLiner, is in the business of providing luxury transportation bus service between Boston and New York City.

11. LimoLiner for its bus service utilizes specially equipped coaches that provide internet movies, hostess service and luxury accommodations together with television and DVD entertainment en route.

12. LimoLiner has established a nitch market for sophisticated travelers, business travelers and luxury bus travels between New York and Boston.

13. On or about May 31, 2004, LimoLiner purchased a Prevost H3-45 motorcoach from Setra of North America, Inc. for a purchase price of $205,000.00 all as appears in the Bill of Sale attached hereto as Exhibit 1.

14. At the time the plaintiff purchased the motorcoach from the defendant, a written certification was given by Setra to the plaintiff stating that the actual mileage of the vehicle was 152,002 miles. A copy of the Odometer Disclosure Statement required by both federal and state law signed by the defendant is attached hereto as Exhibit 2.

15. Prior to the purchase of this vehicle, LimoLiner made the defendant aware that the plaintiff intended, after the purchase of the vehicle, to convert the vehicle into a luxury coach for use in the business of deluxe passenger transportation between Boston and New York.

16. The plaintiff dealt with representatives of the defendant relative to the purchase in question, told representatives of the defendant the anticipated use of the vehicle, explained to the defendant the intended use of the vehicle and obtained from the defendant their advice regarding the appropriateness of the purchase of the vehicle for the anticipated and proposed use.

17. Prior to the purchase of the vehicle the plaintiff informed the defendant and its representatives that upon purchase of the vehicle the plaintiff intended to refit the interior of the coach and that plaintiff intended to install onboard entertainment, power, plumbing, communications equipment, kitchen equipment, washroom and luxury seating.

18. The plaintiff was assured by the defendant and its representatives that the coach in question would be appropriate for this retro fitting and that the vehicle of its age and mileage would serve the plaintiff's needs for its intended use and service.

19. The plaintiff, prior to purchasing the vehicle in question, relied upon: (a) the expertise of the defendant and its representatives; (b) the reputation of the defendant and its representatives; (c) the written representations made by the defendant and its representatives regarding the actual mileage of the vehicle; and (d) the representations of defendant and its representative in the defendant's written materials regarding the defendant's expertise and knowledge and in particular the fact that the defendant would have inspected the vehicle thoroughly to ensure to the plaintiff the "best product available at a reasonable investment".

20. Upon purchase of the vehicle a complete refit of the interior was undertaken at Amadas Coach in Moneta, Virginia.

21. The refitting of the interior cost approximately $155,000.00 and included the installation of onboard entertainment, power, plumbing, communications equipment, kitchen, washroom and luxury seating.

22. After the refitting of the motorcoach purchased from the defendant, the motorcoach was placed into service on or about September 1, 2004.

23. Since being placed in service the vehicle had repeated mechanical failures.

24. The repeated mechanical failures have occurred from the time of delivery of the coach to the plaintiff to the present. These failures included, but was not limited to, a complete irrepairable failure of the engine transmission system which required the plaintiff to have the engine transmission system replaced by Power Products, a division of Detroit Diesel.

25. In April of 2005, when the vehicle was being repaired at Detroit Diesel for the engine transmission system failure, Detroit Diesel reviewed the onboard ECM monitor and determined that the actual mileage of the motorcoach was 507,471 miles.

26. Prior to receiving the actual ECM monitor mileage from Detroit Diesel, the plaintiff had utilized the vehicle for only 98,000 as shown on the odometer.

27. As a result of the information obtained from Detroit Diesel, it was learned that at the time the vehicle was purchased by the plaintiff from the defendant that the actual mileage was approximately 409,000 not the 152,000 miles as represented in writing by the defendant to the plaintiff.

4

28. The difference of approximately 260,000 miles of use on the motorcoach in excess of the certified figure was a material misrepresentation of fact made by the defendant to the plaintiff.

29. A vehicle of the type in question with over 400,000 miles is a significantly different vehicle than a vehicle of this description with only 150,000 miles.

30. Had the plaintiff been informed by the defendant of the true mileage, the plaintiff would not have purchased the vehicle nor would it have spent $155,000.00 refitting the vehicle for its intended use.

31. The vehicle is unfit for its intended use and continues to have mechanical problems consistent with a vehicle with actual use in excess of 400,000 miles which such mechanical problems are not consistent with a vehicle with mileage of 150,000 miles.

32. On or about June 4, 2005, the plaintiff sent a demand to defendant outlining the facts set forth above and requesting relief from the defendant. A copy of plaintiff's letter of June 4, 2005 is attached hereto as Exhibit 3.

33. The defendant has failed and/or refused to make an appropriate response.

34. On July 22, 2005, the defendant, in writing, acknowledged that the mileage on the vehicle had been understated by at least 100,000 miles. See Exhibit 4 attached hereto.

35. The vehicle in question has had significant and repeated mechanical repairs which have cost the plaintiff significant sums of money to remedy. In addition, the plaintiff has lost revenue due to the vehicle not being able to be utilized for its services.

## COUNT I
### (Breach of Contract)

36. The plaintiff reaffirms and realleges the allegations contained in paragraphs 1 through 35 and incorporates them by reference.

37. The plaintiff and defendant entered into a contract for the sale of the vehicle in question.

38. The defendant breached the contract by not selling to the plaintiff the vehicle in question in accordance with the terms and conditions of the contract.

39. As a result of the defendant's breach of the contract with the plaintiff, the plaintiff has been caused to suffer damages and injury.

## COUNT II
### (Breach of Express Warranty)

40. The plaintiff reaffirms and realleges the allegations contained in paragraphs 1 through 39 and incorporates them by reference.

41. The seller/defendant expressed the warranty and represented the condition of the vehicle including the mileage on the vehicle.

42. The seller breached the expressed warranty regarding the mileage of the vehicle.

43. The mileage stated by the defendant to the plaintiff became an affirmation, fact or promise which was part of the basis of the bargain between the plaintiff and the defendant.

44. The defendant made these expressed warranties knowingly, intentionally or negligently or with reckless disregard of the truth thereof.

45. The plaintiff relied upon the representations of the defendant.

6

46. As a result of the defendant's breach of the expressed warranty, the plaintiff has been caused to suffer damages and injury.

## COUNT III
### (Breach of Contract - Implied Warranty of Merchantability)

47. The plaintiff reaffirms and realleges the allegations contained in paragraphs 1 through 46 and incorporates them by reference.

48. The defendant represented criteria as to the merchantability of the vehicle in question.

49. The defendant warranted that the vehicle would pass without objection in the trade under the contract description which such description included the mileage stated on the Bill of Sale.

50. The vehicle did not conform to the contract description and would not pass without objection in the trade.

51. The actions of the defendant were in violation of the implied warranty of merchantability.

52. The defendant's breach of the implied warranty of merchantability has caused the plaintiff to suffer damages and injury.

## COUNT IV
### (Breach of Contract - Implied Warranty of Fitness for a Particular Purpose)

53. The plaintiff reaffirms and realleges the allegations contained in paragraphs 1 through 52 and incorporates them by reference.

54. The plaintiff made known to the defendant prior to its purchase that the buyer was purchasing the vehicle in question for a particular purpose.

55. The defendant seller had reason to know the particular purpose for which the plaintiff intended to use the vehicle in question.

56. The plaintiff relied upon the seller's skill or judgment to select or furnish an appropriate vehicle for the intended use.

57. The vehicle purchased by the plaintiff from the defendant was not fit for the particular use in question.

58. As a result of the vehicle not being fit for the particular use in question, the plaintiff suffered damages and injury.

## COUNT V
### (Fraudulent Inducement)

59. The plaintiff reaffirms and realleges the allegations contained in paragraphs 1 through 58 and incorporates them by reference.

60. As set forth above, the defendant made material factual representations to the plaintiff prior to the purchase of the vehicle in order to induce the plaintiff to purchase the vehicle.

61. The material statements of fact made by the defendant to the plaintiff to induce the plaintiff to purchase the vehicle in question were knowingly false or were made with reckless disregard of the truthfulness thereof.

62. The plaintiff reasonable relied on the material factual representations made by the defendant to the plaintiff.

63. But for the material factual representations made by the defendant to the plaintiff, the vehicle in question would not have been purchased by the plaintiff.

64. As a result of the plaintiff's reasonable reliance on the material misrepresentations of fact made by the defendant, the plaintiff was caused to change its position and was injured thereby.

## COUNT VI
### (Misrepresentation)

65. The plaintiff reaffirms and realleges the allegations contained in paragraphs 1 through 64 and incorporates them by reference.

66. As set forth above, the defendant made material factual representations to the plaintiff.

67. The material factual representations made to the plaintiff by the defendant were made with an intent to induce the plaintiff to rely thereupon.

68. The representations regarding the vehicle in question were material and were made with the intent of seeking to induce the plaintiff to reasonably rely thereupon.

69. The plaintiff did reasonably rely upon the representations of fact made by the defendant.

70. At the time the defendant made the representations of fact regarding the vehicle to the plaintiff, the defendant knew that the representations were true or otherwise failed to reasonably investigate the truthfulness thereof.

71. As a result of the defendant's misrepresentations of the material facts to the plaintiff which the plaintiff reasonably relied upon the plaintiff was caused to suffer damages and injury.

## COUNT VII
### (Breach of Good Faith and Fair Dealing)

72. The plaintiff reaffirms and realleges the allegations contained in paragraphs 1 through 71 and incorporates them by reference.

73. Every contract has reputed thereupon an obligation of good faith and fair dealing.

74. The defendant violated and/or breached the obligation of good faith and fair dealing by misrepresenting to the plaintiff the vehicle in question, the mileage of the vehicle in question and the suitability of the vehicle in question for the plaintiff's intended purposes.

75. As a result of the defendant's breach of its obligation of good faith and fair dealing to the plaintiff related to the vehicle in question, the plaintiff has been caused to suffer damages and injury.

## COUNT VIII
### (Violation of Chapter 93A, Section 11)

76. The plaintiff reaffirms and realleges the allegations contained in paragraphs 1 through 75 and incorporates them by reference.

77. The plaintiff and defendant are persons engaged in commerce or trade as defined by Chapter 93A of the Massachusetts General Laws and the Regulations of the Attorney General enacted pursuant thereto.

78. The actions of the defendant as set forth above constitute a knowing, willful, intentional or negligent violation of Chapter 93A, Sections 2 and 11 and also constitute a knowing violation of the Regulations of the Attorney General pursuant to the Commonwealth of Massachusetts enacted pursuant to Chapter 93A of the Massachusetts General Laws.

79. As a result of the defendant's breach of Chapter 93A and the Regulations of the Attorney General enacted pursuant thereto, the plaintiff has been caused to suffer damages and injury.

## COUNT IX
### (Violation of Massachusetts General Laws Chapter 266, Section 141, et sec.)

80. The plaintiff reaffirms and realleges the allegations contained in paragraphs 1 through 79 and incorporates them by reference.

81. Pursuant to Massachusetts General Laws Chapter 266, Section 141, prohibits the sale of any
vehicle other than with the true mileage driven.

82. The defendant did sell a motor vehicle with improperly stated mileage and did advertise the
sale of said vehicle.

83. In violation of Massachusetts General Laws Chapter 266, Section 141 is a per se violation of
Chapter 93A of the Massachusetts General Laws and constitutes an unfair or deceptive
method of competition.

84. The actions of the defendant constitute a knowing, intentional or negligent violation of
Massachusetts General Laws Chapter 266, Section 141 and a violation therefore of Chapter
93A of the Massachusetts General Laws.

85. The sale of the vehicle in question was violative of the Truth and Mileage Act as set forth in
Title 49 United States Code, Section 32705.

86. The action of the defendant in transferring title to the vehicle without properly disclosing the
true mileage of the vehicle constitutes a violation of 49 USC, Section 32705 and constitutes a
per se violation of Chapter 93A of the Massachusetts General Laws.

## COUNT X
**(Violation of Chapter 266, Section 141 of the Massachusetts General Laws and Title 49 of
the United States Code, Section 32705)**

87. The plaintiff reaffirms and realleges the allegations contained in paragraphs 1 through 86 and
incorporates them by reference.

88. The actions of the defendant in violation of Massachusetts General Laws Chapter 266,
Section 141 and Title 49 of the US Code, Section 32705 have caused the plaintiff to suffer
damages and injury.

11

WHEREFORE, the plaintiff demands as follows:

1. That this Honorable Court rescind the sale in question and order the defendant to repay to the plaintiff the purchase price of the vehicle, the cost of retrofitting of the vehicle and all other monetary damages sustained by the plaintiff;

2. That the Court award judgment in favor of the plaintiff against the defendant in such amount as the Court deems appropriate and just in light of the circumstances;

3. That the Court award the plaintiff up to three times the amount of actual damages sustained together with costs, interest and attorney's fees.

**THE PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,

Plaintiff, LimoLiner, Inc.,

By its Attorney,

Jonathon D. Friedmann, Esq.
BBO #: 180130
Erica F. Mastrangelo
BBO #: 661561
RUDOLPH FRIEDMANN LLP
92 State Street
Boston, MA 02109
(617) 723-7700

Dated: August 16, 2005



**SETRA**

A DaimlerChrysler Company

# AGREEMENT TO PURCHASE

February 12, 2003
**Date**

Upstate Tours, Inc.
**Purchaser Name**

P.O. Box 325, Geyser Road
**Street Address**

Saratoga Springs, NY  12866
**City, State, Zip**

(518) 584-5252                    (518) 584-1092
**Bus. Phone**                         **Fax No.**

Please enter my order for the following:   ☒ New   ☐ Used   Year:  2004   Make:  Setra
Model or                Body
Series:  S417   Type:   Coach   Color:  TBD   V.I.N.:  TBD

To be delivered
on or about:   09/03 & 11/03   Salesperson:  Darril King          Stock No.:

| Cash Delivered Price of Vehicle **(USD)** | |
|---|---|
| **(12) S417 Units @ $389,558 Each per the Attached Specification** | $4,674,696 |
| **Trade Value for (12) Coaches -- (10) '98 Prevost H3-45  +  (2) '99 Prevost H3-45** | ($2,670,000) |
| **Total Cash Price is F.O.B. Greensboro, NC** | $2,004,696 |
| **Parts Credit of $1,250 per Coach to be Provided** | |
| | |
| | |
| | |
| | |

| | | | |
|---|---|---|---|
| Used Vehicle Trade-In: (12) coaches (see attachment) | | Total Price of (12) Units | $4,674,696 |
| Make of Trade-In:  Prevost | | Down Payment | $2,670,000 |
| Year:   (10) 1998--(2) 1999   Model:   H3-45 | | Unpaid Cash Balance due | |
| V.I.N.:  (see attachment) | | on Delivery | $2,004,696 |
| Balance Owed To: | | | |
| Address/Contact: | | | |
| Used Trade In Allowance | $2,670,000 | (for 12 coaches per attachment) | |
| Balance Owed on Trade In | $ | | |
| Deposit or Credit Balance | $ | | |
| Down Payment | $ | | |

Attention used coach buyers: If you are buying a used coach with this contract, federal regulations may require a special buyers guide be displayed on the window of the vehicle. The information you see on the window form for this vehicle is part of the contract. Information on the window form overrides any contrary provisions in the contract of sale.

The front and back of this Order comprise the entire agreement affecting this purchase and no other agreement or understanding of any nature concerning same has been made or entered into, or will be recognized. I hereby certify that no credit has been extended to me for the purpose of this motor vehicle except as appears in writing on the face of this agreement. I have read the matter printed on the back hereof and agree to it as part of this order the same as it were printed above my signature.

Drew Fuller

Glenn Matthews
**Purchaser's Signature**

Darril King
**Setra Authorized Representative**

**Setra Authorized Representative**

# TERMS AND CONDITIONS

1 All prices stated in this Agreement are subject to change to conform to prices of SETRA of North America, Inc., hereinafter called the "Seller", in effect at the time the motor coach(es) ordered under this Agreement are shipped, and will be increased or decreased if Seller changes its prices before shipment. Seller shall give Buyer written notice of any such increase or decrease in prices, and Buyer shall have the privilege of terminating this order within ten (10) days thereafter for any increase in the sales price only. If this Agreement is terminated because of a sales price increase, Seller shall return Buyer's cash deposit, if any.

2 This Agreement will not be binding on Seller until approved and accepted by Seller in writing indicated by an authorized signature.

3 This Agreement is not assignable or transferable, without seller's consent.

4 If payment of any part of the price is deferred until after delivery, Buyer shall execute prior to delivery a security agreement and financing statement in a form required by Seller to evidence and secure the amount deferred.

5 If the Buyer fails to accept or take delivery of the equipment within 30 days after the date that the coach is available for delivery, at Seller's option the Buyer shall be obligated to pay interest, at Seller's maximum current rate of interest on conditional sales contracts, on the unpaid balance commencing on the thirty-first day after the date on which the motor coach became available for delivery. The Seller, at its option, by notice in writing to the Buyer, may terminate this Agreement and retain the deposit as liquidated damages and, not as a penalty, and the Seller may take what other additional remedies that it may have at law.

6 This Agreement shall not be subject to termination by either Buyer or Seller, except as provided herein.

7 Buyer shall be in default under this Agreement if it (1) becomes bankrupt, insolvent, or unable to meet its financial obligations as they materialize during the term of this Agreement, without prejudice to any other rights of Seller at the time of such termination. Upon default, Seller may pursue all its rights at law and shall be entitled to all costs of collection, including reasonable attorneys fee.

8 Without notice to Buyer, Seller may at any time make changes or improvements in the model and/or design of the motor coach(es) or any part thereof, provided that such changes do not adversely affect quality, but Seller shall have no obligation to make any changes or improvement either prior to or after delivery.

9 Seller represents that it is the lawful owner of and has full right to sell the motor coach(es) sold under this Agreement, and that it has good title to the motor coach(es), free and clear of any and all liens and encumbrances.

10 Seller shall not be liable for any damages resulting from, and Buyer shall not have the right to terminate this Agreement for Seller's nonperformance or delay in performance due in whole or in part to any causes beyond Seller's control, including without limitation, acts of God, acts of the public enemy, acts of the Government, fires, floods, windstorms, tornadoes, wars, riots, insurrections, strikes, lockouts, sitdowns, slowdowns, or other labor trouble causing cessation or interruption of operations, or inability to procure labor or materials. This agreement shall be deemed suspended so long as and to the extent that any such cause prevents or delays Seller's performance.

11 Risk of loss to each motor coach sold hereunder shall pass from the Seller to Buyer at the time that each such motor coach is accepted by Buyer. Title to each motor coach sold hereunder shall likewise pass from Seller to Buyer at the time that each such motor coach is accepted by Buyer, unless, Seller shall not then have received the full and entire purchase price due for each such motor coach. Buyer agrees to execute a suitable document on a form Approved by Seller evidencing its acceptance of each motor coach sold hereunder.

12 The price stated herein shall be subject to an additional charge to cover any existing or future sales, use or similar tax or other charge which Seller must collect under applicable law.

13 This Agreement shall be governed by and shall be construed in accordance with the laws of the State of Maine.

14 SELLER'S LIMITED WARRANTY

a. A BUYER EXPRESSLY ACCEPTS THE FOLLOWING AS TH E SOLE WARRANTY APPLICABLE TO ANY NEW COACH SOLD BY SETRA OF NORTH AMERICA, INC.
THIS WARRANTY SHALL REPLACE ALL OTHER UNDERSTANDINGS, REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE OR USE AND ANY OTHER OBLIGATIONS OR LIABILITIES OF SETRA OF NORTH AMERICA, INC. IN RESPECT TO SAID COACH OR ITS USE AFTER DELIVERY.

b. SETRA/ warrants the products of its manufacture against defects in material or workmanship as follows:
Parts and labor for 24 months or 200,000 miles, whichever comes first from date of delivery to the original purchaser;

c. Setra obligation is to repair or replace free of charge any part which SETRA deems defective, provided that all defective items on which warranty claims asserted are returned, postage prepaid to SETRA, accompanied by SETRA warranty form fully completed with a written explanation of the claimed defects and circumstances of failure

d. DRIVE COMPONENTS, I.E. TRANSMISSION AND ENGINE, MANUFAC-TURED IN USA CARRY ONLY MANUFACTURER'S WARRANTY, NOT SETRA.

e. SETRA WARRANTY SHALL NOT APPLY IF SAID COACH, ITS EQUIPMENT OR ACCESSORIES HAS BEEN:

1. Subject to abuse, neglect or damage from an accident;
2. Operated or maintained or installed in a manner contrary to that directed in the Operator's Manual, or
3. Altered, modified, changed, reworked or replaced in a manner which would affect serviceability.

f. SETRA EXPRESSLY DOES NOT WARRANT MAINTENANCE ITEMS:

including batteries, glass, tires, filters, ignition and tune-up parts, belts lubricants, light bulbs, sealed beam units, antifreeze, and paint unless contaminated or damaged by a failure of a warranted pat.

g. ENFORCEMENT OF THIS WARRANTY SHALL BE THE SOLE AND EXCLUSIVE REMEDY OF BUYER. SETRA SHALL NOT BE LIABLE FOR DIRECT, INDIRECT, CONSE-QUENTIAL OR OTHER DAMAGES, INCLUDING ATTORNEYS FEES WITH RESPECT TO A CLAIM REGARDING THE SALE OR SAID COACH.

h. No person, firm or corporation is authorized to assume for SETRA any other liability in connection with this Warranty or the sale of this coach.

15 This Agreement contains the entire agreement relating to the purchase of said motor coach(es) and Buyer agrees that no other representations or understandings exist as to this purchase. No modification or termination of this Agreement, nor any waiver of its terms, shall bind seller unless in writing and signed by Seller's authorized representative.



A DaimlerChrysler Company

Setra of North America, Inc.
6012B High Point Road
Greensboro, NC 27407

# INVOICE

Sold To: Upstate Tours, Inc.
P.O. Box 325, Geyser Road
Saratoga Springs, NY 12866

Delivered To: Same As "Sold To"

FOB: Greensboro, NC

| Date | Salesperson | Terms | V.I.N. | Invoice No. |
|------|-------------|-------|--------|-------------|
| 11/12/03 | Darril King | CASH | See List Below | N1112-NS00093 |

| Quantity | Description/VIN# | Price |
|----------|------------------|-------|
| 12 Unit | **2004 Setra S417 at $389,558.00 per vehicle** | **$ 4,674,696.00** |
| | WKKA34AD343000091/WKKA34AD943000094 | |
| | WKKA34AD743000093/WKKA34AD043000095/ | |
| | WKKA34AD043000100/WKKA34AD243000101 | |
| | WKKA34AD443000102/WKKA34AD643000103 | |
| | WKKA34AD843000104/WKKA34ADX43000105 | |
| | WKKA34AD143000106/WKKA34AD543000092 | |
| | | |
| | | |
| | Trades | |
| 10 units | **1998 Prevost H3-45 ($220,000.00 per vehicle)** | **($ 2,200,000.00)** |
| | 2PCH33495W1012372/2PCH33497W1012373 | |
| | 2PCH33499W1012374/2PCH33490W1012375 | |
| | 2PCH33492W1012376/2PCH33494W1012380 | |
| | 2PCH33496W1012381/2PCH33498W1012382 | |
| | 2PCH3349XW1012383/2PCH33495W1012386 | |
| 2 units | **1999 Prevost H3-45 ($235,000.00 per vehicle)** | **($ 470,000.00)** |
| | 2PCH33490X1012717/2PCH33492X1012718 | |
| | **Less: Payment Received (10/06/03)** | **($ 1,168,674.00)** |
| | **Less: Payment Received (11/24/03)** | **($ 847,790.00)** |
| | **Balance due to Upstate Transit, Inc.** | **($ 11,768.00)** |



LUXURY COACHES

SETRA of North America, Inc.
6012B High Point Road
Greensboro, NC 27407
Office Tel.:    336-878 5400
                800-882-8054
Main Fax:    336-878-5410
E-mail: setrausa@setrausa.com
Web Site: www.setrausa.com

## PRE-OWNED COACH TRADE IN AGREEMENT

1. Prior to trade-in, customer must disclose, in writing, if coach has ever been involved in an accident.

2. Coach must be in saleable condition at time of trade in.

3. No broken, chipped or discolored glass.

4. Coach must be clean including the luggage bay.

5. Coach to be equipped with nine (9) tires, 50% or better tread life. Leased tires must be purchased by customer prior to trade-in. *SETRA WILL PURCHASE THE LEASE TIRES FROM RESIDUAL IF SETRA ACQUIRES*

6. Coach specifications are not to be changed as represented on evaluation sheets.

7. Coach shall be in a safe and lawful condition, meeting DOT requirements.

8. Lettering and decals to be removed before trade-in.

9. A copy of the maintenance records to be turned in with trade.

10. Toilet must be dumped and clean.

11. All body damage must be repaired as per factory repair instruction.

12. All systems must be in working order according to factory specifications.

13. Coach to be delivered to a location specified by SETRA of North America, Inc. at the time new coach is ready to be picked up.

**IF ANY OF THE ITEMS ABOVE ARE NOT ADHERED TO, THE CUSTOMER AGREES THAT THE COST WILL BE DEDUCTED FROM TRADE-IN VALUE.**

~~Glenn Matthews~~ *Dan Tiller*    *W Till* VP    February 12, 2003
Customer Signature                                 Date

Upstate Tours, Inc.                          (See Attachment)
Company Name                                 Coach VIN#

A DaimlerChrysler Company

# ODOMETER DISCLOSURE STATEMENT-TRADE IN

Federal and State law require that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

I state that the odometer now reads ___151,981___ miles and to the best of my knowledge that it reflects the actual mileage of the vehicle described below, unless one of the following statements is checked.

☐ (1) I hereby certify that the odometer reading reflects the amount of the mileage in excess of its mechanical limits.

☐ (2) I hereby certify that the odometer reading is **not** the actual mileage. **WARNING – ODOMETER DISCREPANCY.**

| MAKE | BODY STYLE | YEAR | SERIES MODEL |
|------|-----------|------|-------------|
| Prevost | Coach | 1999 | H3-45 |
| VEHICLE IDENTIFICATION NUMBER | | LAST PLATE STATE YEAR NUMBER | |
| 2PCH33490X1012717 | | | |

Upstate Transit, Inc.
(Seller's Name)                                    (Seller's Signature)
P.O. Box 325, Geyser Road
(Seller's Address)
Saratoga Springs, NY 12866
City, State, Zip

(Buyer's Signature – Acknowledging Mileage Reading as Certified)
Setra of North America, Inc.
(Buyer's Name, Hand Printed)

6012B High Point Road
(Buyer's Address)
Greensboro, NC 27407
City, State, Zip

12/17/03
(Date of Certification)

**ALTERATIONS OR ERASURES VOID THIS FORM**